[Crim. No. 538.   Fourth Dist.—June 23, 1941.]

THE PEOPLE, Respondent, v. WILLIAM GIMINIANI, Appellant.

Victor H. Parry and James Vizzard for Appellant.

Earl Warren, Attorney General, and Bayard Rhone, Deputy Attorney General, for Respondent.

BARNARD, P. J.—The defendant was charged with rape and in second and third counts with violations of section 288 of the Penal Code. He was found guilty on all three counts and has appealed from the judgment and · from an order denying his motion for a new trial.

The first two counts involve a 10-year-old girl named Barbara and acts alleged to have taken place on April 13, 1940. The third count involves Barbara's 8-year-old sister, Patricia, and acts alleged to have taken place on June 22, 1940.

The appellant is a brother of the wife of the next door neighbor of the parents of these two girls. The acts involved in all three counts are claimed to have taken place in a building at the rear of the neighbor's lot. This building consisted of a two-car garage with two rooms at one end. In front was a wash room containing a laundry tray, and to the rear of that was a storeroom containing a bed. The appellant had often visited his sister's home and was acquainted with these two girls.

There is evidence that on April 13, 1940, while the appellant and the two girls were in the back yard of his sister's home, he suggested that they play hide and seek. The younger girl was "it" and was to count to 500 by 5's while the others hid. Barbara testified that when her sister began to count she went through the wash room into the storeroom and hid behind the bed, that the appellant followed her into that room and lifted her upon the bed, that the acts involved in counts one and two then took place, and that appellant desisted when Patricia entered the wash room.

With reference to the acts involved in the third count there is evidence that on June 22, 1940, the appellant was at his sister's home and that his nephew and a brother of the two girls were washing his car. Patricia testified that on this occasion the appellant handed her a chamois and told her to

wash it, that she went into the wash room and proceeded to wash it at the laundry tray, and that while she was doing this the appellant came in and committed the acts in question.

The appellant first contends that the verdicts are not supported by the evidence. It is virtually conceded that the evidence, if believed, is sufficient but it is argued that portions of the evidence given by the two girls are so inherently improbable that they could not be accepted as true, with the result that there is no substantial evidence to support the verdicts. In each instance, the testimony of the girls is corroborated by other witnesses in so far as the surrounding events and circumstances are concerned, although in each instance there is no corroborating evidence as to what took place inside of the building.

With respect to the claimed improbability of Barbara's testimony it is argued that for Patricia to have counted to 500 by 5's could have consumed little more than two minutes at most, and that it was impossible for the things described by Barbara to have taken place within that period of time. The evidence is such that this conclusion would not necessarily follow even though it be assumed that only two minutes elapsed. Moreover, this argument entirely fails because, so far as appears from the evidence, considerable time may have elapsed between the time Patricia completed the counting and the time she entered the wash room and alarmed the appellant, during which time she may have been searching elsewhere. It is further argued in this connection that it was a physical impossibility for the appellant to have effected penetration while a certain portion of the girl's clothing was about her ankles, as she testified. The argument hardly sounds convincing and, as the record clearly indicates, the entire matter presented a question of fact for the jury.

The only claim of improbability in connection with the testimony of Patricia rests upon an asserted conflict between a statement she made on direct examination and one on cross-examination. A reading of the transcript discloses that the two statements were not in the least conflicting and nothing in her testimony is pointed out to us which in any way indicates improbability.

The appellant testified that he was not at his sister's home on either of these two occasions and produced a number of witnesses who testified that he was elsewhere on each of those

days. The plain situation is that if the People's evidence is accepted as true there is no question of appellant's guilt, while if the appellant's evidence is accepted he was not there on either occasion. It may be here observed that the record discloses a number of matters in connection with the testimony of several of appellant's witnesses which strongly indicate why the jury preferred to accept the testimony of the two girls and the other witnesses for the People. While the evidence is conflicting, it is sufficient to support the verdicts and judgment.

It is next contended that the court erred in denying the motion for a new trial for the reason that the jury received evidence out of court. The asserted facts upon which this contention is based are as follows: A few hours after the verdict was rendered a woman juror, in the presence of several other persons, told one of the attorneys for the appellant that another woman, whom she did not name, had called her on the telephone on the evening before, while the action was still pending, and had told her that the appellant had previously been convicted of a similar offense and that he had a bad record for such offenses.

Five days after the verdict was returned the attorney who had heard the juror's statement had his secretary call a Mrs. Clampitt while he and another listened on two extensions of the phone. The secretary represented to Mrs. Clampitt that she was a friend of this juror, that she was the mother of two children and worried because of the facts surrounding this case, that this juror had told her that Mrs. Clampitt had talked to her and suggested that she call Mrs. Clampitt for further information about the case. Mrs. Clampitt then told the secretary that the appellant had been convicted of a similar crime in 1925 and that there had been other charges against him, mentioning one in particular. The secretary did not directly accuse Mrs. Clampitt of having talked to this juror but, during the conversation, when the secretary mentioned that the juror had said that Mrs. Clampitt had talked to her regarding this case, Mrs. Clampitt did not deny the fact.

In support of his motion for a new trial the appellant filed the affidavits of the persons who had heard the juror's statement a few hours after the verdict was returned and also the affidavits of the secretary and the two other persons who had

heard the telephone conversation with Mrs. Clampitt. The affidavit of the juror who is said to have made the statement was not filed.

The appellant contends that the circumstances here do not come within the rule that a juror may not impeach the verdict, it being insisted that it was here established by evidence other than that of the jurors that outside evidence was received. In discussing a similar contention the Supreme Court, in *People* v. *Gidney,* 10 Cal. (2d) 138 [73 Pac. (2d) 1186], said:

"Another affidavit charges the bailiff with informing the juror that one of the defendants had a bad reputation with the police. That these activities would justify a new trial cannot be doubted, and it may be conceded that such misconduct, properly established, would constitute reversible error.

"There remains the question whether it was properly established, and in this case the only evidence to show the misconduct was that of the jurors themselves. Their affidavits constitute an impeachment of their verdict, and under the provisions of section 657 of the Code of Civil Procedure, cannot be admitted in evidence. Counsel for defendants urges that a distinction should be made between the situation where jurors affirm improprieties in their own deliberations and where, as here, they disclose outside influences, unauthorized communications by a court officer. Some jurisdictions make this distinction, while others apply the general rule literally. (Citing authorities.) In California the rule is statutory, and it has been held that the statutory exception of chance verdicts is exclusive. Accordingly, affidavits of jurors showing misconduct out of court or evidence received by them from outside sources have been refused admission."

In *People* v. *Reid,* 195 Cal. 249 [232 Pac. 457, 36 A. L. R. 1435], the court said:

"His claim to relief rests solely upon the affidavits of jurors, the necessary effect and sole purpose of which is to impeach their verdict, but it is well settled that the testimony of jurors is utterly incompetent for this purpose. Upon well-grounded considerations of public policy jurors are legally disabled to impeach their verdict by any means, whether it be by affidavit or by testimony or by extra-judicial statements."

A very similar situation was recently held by this court to

be insufficient to justify a reversal. (*People* v. *King*, 40 Cal. App. (2d) 137 [104 Pac. (2d) 521].)

The rule seems to be thoroughly established in this state that the statement of a juror may not be used to impeach the verdict whether it takes the form of an affidavit or an extra-judicial statement. In the instant case, the proof offered was to the effect that this juror had made such a statement, and there was no direct evidence of the pertinent fact that outside evidence had been received by the juror. The juror's affidavit would have been inadmissible, and the evidence of the woman who is said to have talked to her was not obtained. Aside from any other consideration, the affidavits relating to the telephone conversation with Mrs. Clampitt, did not even establish that she was the woman who talked to the juror, if anyone did. Nothing further appears than that proof was offered that the juror had made a statement which had the effect of impeaching the verdict. As the verdict may not be impeached by the affidavit of the juror it cannot be impeached by affidavits of third persons which merely set forth the substance of extra-judicial statements made by the juror. It may be conceded that the fact sought to be proved, if properly established, would have justified the granting of a new trial. It would seem that something more could have been done in the trial court to secure the presence of Mrs. Clampitt to further investigate the facts in this regard. But this was not done and we are confined to the record before us which, under the established rule, is not sufficient to justify a reversal. Any relaxation of the rule might lead to most undesirable conditions. Moreover, the rule is statutory and any change therein should come from the legislature.

The appellant's last point is that the district attorney was guilty of prejudicial misconduct in his closing argument to the jury. It is suggested that the district attorney there gave expression to his personal belief as to the guilt of the appellant, as distinguished from a belief based upon the testimony. The record does not support this contention. It is further argued that a remark made by the district attorney to the effect that the only pleasant thing about this case was the fact that it had been possible for the details to come "from the mouths of the victims themselves instead of from an autopsy surgeon" was inflammatory and prejudicial, as tending

to remind the jury of certain well known cases in this state where the victims had been killed. The remark should not have been made but no request was made of the court to instruct the jury to disregard the same. It by no means appears that it was so prejudicial that its effect could not have been removed in that manner had a timely request been made. No reversible error appears in this connection.

The judgment is affirmed.

Marks, J., and Griffin, J., concurred.