[L. A. No. 24930.   In Bank.   Sept. 19, 1958.]

PEARL ANNA KOLLERT et al., Appellants, v. ALBERT FRANKLIN CUNDIFF et al., Respondents.

Robert H. Lund and Floyd H. King for Appellants.

Parker, Stanbury, Reese & McGee and J. H. Peckham for Respondents.

GIBSON, C. J.—Plaintiffs have appealed from a judgment for defendants, contending that the court erred in instructing the jury and in refusing to consider affidavits of jurors offered in support of a motion for new trial to prove misconduct of the jury.

The plaintiffs, Mrs. Kollert, Mrs. Abrahamson, and four children, were riding in a car which Mrs. Kollert was driving

when it collided with one operated by defendant Cundiff who was then acting in the course of his employment by defendant The Termo Company. Mrs. Abrahamson, who is Mrs. Kollert's mother, was riding in the front seat with her. Four children, Steven and Michael Kollert and Mary and Marlene Cleveland, were riding in the back seat of the car.

The accident occurred in Long Beach at the intersection of Carson Avenue and Paramount Boulevard, where traffic is controlled by electrically operated signals. Mrs. Kollert was driving west on Carson in the lane nearest the center line, and, as she approached the intersection, there was no car in front of her in that lane. She testified that the signal light on Carson turned from red to green when she was half a block from the intersection, that she was driving about 20 miles an hour and that she did not see defendant's car until the collision occurred. A man who had been driving about 300 feet behind Mrs. Kollert in the lane to her right testified that the light was green when she entered the intersection and that it was still green when the accident happened.

Cundiff was driving east on Carson, intending to make a left turn north into Paramount. He testified that the light was green as he came to the intersection and that he stopped even with the curb. He signaled for a left turn, moved into the intersection and waited for several westbound cars to pass. As the light changed to amber, he drove across the double line and saw the car driven by Mrs. Kollert, which was then approximately 50 feet east of the intersection, traveling at about 35 miles per hour. The cars came together in the westbound lane nearest the center line, the right front part of Mrs. Kollert's car colliding with the right front wheel of Cundiff's car.

A witness who was driving the third car behind Cundiff and in the same lane testified that traffic at the intersection had stopped and that as the cars in the lane to the right began to move, Cundiff, starting out very fast, turned left into the intersection. The witness said that he noticed Mrs. Kollert's car coming toward Cundiff "at a good rate of speed," as soon as Cundiff started to move.

There was substantial evidence to support the implied finding of the jury either that Cundiff was not negligent or that Mrs. Kollert was guilty of contributory negligence. However, in considering whether errors, if any, had a prejudicial effect, it should be noted that, on both of these issues, the

evidence would also have warranted a finding against defendants.[1]

The court gave instructions which submitted the issue of contributory negligence to the jury not only as to Mrs. Kollert but also as to Mrs. Abrahamson. Defendants did not plead that Mrs. Abrahamson was guilty of contributory negligence, and they concede that the instructions were erroneous as to her but take the position that the error was not prejudicial.

Defendants point out that the jury found against the four children in the car, although it was instructed that the defense of contributory negligence did not apply to them, and they argue that the jury must have based its verdict for Cundiff on a conclusion that he was not negligent. The findings against the children could be explained upon the theory that they had not proved any substantial injuries caused by the accident. With respect to three of the children it is clear that the jury was not required to find under the evidence that they had been injured, and it may be noted that defendants moved for a directed verdict as to them on this ground. However, defendants assert that it was conclusively established that the other minor plaintiff had received a fractured finger as a result of the accident. We do not agree that this is so. Although a doctor testified that a week after the accident he found a slight fracture, defendants presented evidence that X-rays taken at a hospital immediately after the accident showed no fracture, and, on cross-examination by defendants, the doctor acknowledged that the fracture might have been sustained at some time after the accident. Thus the jury may have concluded that the minor plaintiffs received no substantial injuries and may have found against them on that ground.

As we have seen, the evidence would support a finding that both Cundiff and Mrs. Kollert were negligent. The jury may have believed that Mrs. Abrahamson was chargeable with Mrs. Kollert's negligence or that she in some degree failed

---

[1] At the time of the accident, July 1955, section 551 of the Vehicle Code provided:

"(a) The driver of a vehicle within an intersection intending to turn to the left shall yield the right of way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard.

"(b) Said driver turning left having so yielded and having given a signal when and as required by this code may make such left turn and the drivers of all other vehicles approaching the intersection from said opposite direction shall yield the right of way to the driver making the left turn."

to exercise due care for her own safety, and the erroneous instructions, when considered with the evidence, may have improperly caused the jury to go beyond the issues pleaded and return the verdict against Mrs. Abrahamson on the ground of contributory negligence. In these circumstances we are of the view that the erroneous instructions require that the judgment against Mrs. Abrahamson be reversed.

When the jurors were polled, they stood nine to three in favor of defendants. In support of the motion for a new trial, affidavits of the three dissenting jurors and of one majority juror were offered. The affidavits may be summarized as follows: The jury, taking four polls, considered the case of Mrs. Kollert only, and by a poll of nine to three found that both drivers were negligent and that Mrs. Kollert should be denied recovery. The bailiff was summoned for the purpose of securing additional instructions as to the remaining plaintiffs. He asked how the deliberations stood, and the foreman answered that the vote was nine to three. The bailiff then left, returned, and advised that there would be no need for further instructions since a verdict had been reached. Over the protest of some jurors the foreman completed the verdicts as to the remaining five plaintiffs without any further deliberation. Two of the affidavits stated that the foreman told the jurors that they would have to abide by the verdicts completed by him or they would never again be allowed to act as jurors. According to three affidavits, the foreman, during a night recess, had investigated the traffic lights at the intersection where the accident occurred, and his report on the periods of the signals was considered by the jury.

It is the general rule in California that affidavits of jurors may not be used to impeach a verdict. (See *People* v. *Sutic*, 41 Cal.2d 483, 495 [261 P.2d 241] [coercion of a juror by the others to subscribe to a verdict] ; *People* v. *Evans*, 39 Cal.2d 242, 250 [246 P.2d 636] [evidence received out of court] ; *People* v. *Gidney*, 10 Cal.2d 138, 146, 147 [73 P.2d 1186] [bailiff discussed case and probable sentence with jurors] ; *People* v. *Azoff*, 105 Cal. 632 [39 P. 59] [evidence received out of court] ; *People* v. *Zelver*, 135 Cal.App.2d 226, 235-236 [287 P.2d 183] [juror "coerced" and "intimidated" by other jurors] ; *Maffeo* v. *Holmes*, 47 Cal.App.2d 292, 295 [117 P.2d 948] [independent investigation by some jurors] ; *People* v. *Giminiani*, 45 Cal.App.2d 535, 539 [114 P.2d 392] [jury informed by bailiff that a defendant had a bad reputation with the police].)

█ An exception to the general rule is made by statute where "any one or more of the jurors have been induced to assent to any general or special verdict . . . by a resort to the determination of chance. . . ." (Code Civ. Proc., § 657, subd. 2.[2]) Another exception, recognized by judicial decision, is that affidavits of jurors may be used to set aside a verdict where the bias or disqualification of a juror was concealed by false answers on *voir dire.* (E.g., *Williams* v. *Bridges*, 140 Cal.App. 537 [35 P.2d 407].)

█ Subdivision 1 of section 657, which provides that a verdict may be vacated for "irregularity in the proceedings," does not refer to jurors' affidavits and may not be regarded as permitting the use of such affidavits in situations where they would not otherwise be proper. (*Cf. People* v. *Evans,* 39 Cal.2d 242, 250 [246 P.2d 636] [rejecting a similar argument made with respect to Pen. Code. § 1181, subd. 2].) The statements to the contrary in *Shipley* v. *Permanente Hospital,* 127 Cal.App.2d 417, 424 [274 P.2d 53, 48 A.L.R.2d 964], are disapproved.

A few jurisdictions permit a wider use of a juror's affidavit to impeach a verdict than has been allowed in California (see *Wright* v. *Illinois & Mississippi Tel. Co.,* 20 Iowa 195, 210-212; *Mattox* v. *United States,* 146 U.S. 140, 148-150 [13 S.Ct. 50, 36 L.Ed. 917]), and plaintiffs urge us to relax the rule in this state. The problem involves the balancing of two conflicting policies. It is, of course, necessary to prevent instability of verdicts, fraud, and harassment of jurors, and, on the other hand, it is desirable to give the losing party relief from wrongful conduct by the jury. The court in *McDonald* v. *Pless,* 238 U.S. 264, 267-269 [35 S.Ct. 783, 59 L.Ed. 1300], after discussing these policies and stating that the wrong to the individual was the lesser of two evils,

---

[2]Section 657 of the Code of Civil Procedure provides in part:

"The verdict may be vacated and any other decision may be modified or vacated, in whole or in part, and a new or further trial granted on all or part of the issues, on the application of the party aggrieved, for any of the following causes, materially affecting the substantial rights of such party:

"1. Irregularity in the proceedings of the court, jury or adverse party, or any order of the court or abuse of discretion by which either party was prevented from having a fair trial;

"2. Misconduct of the jury; and whenever any one or more of the jurors have been induced to assent to any general or special verdict, or to a finding on any question submitted to them by the court, by a resort to the determination of chance, such misconduct may be proved by the affidavit of any one of the jurors; . . ."

concluded that as a general rule the affidavits should be excluded but that there might be instances where the rule could not be applied without "violating the plainest principles of justice."

In California, as we have seen, only two exceptions have been recognized, one by statute and one by judicial decision. The present case does not come within either of them, and, whether or not additional exceptions may be justified under some circumstances, we are of the view that the allegations of the affidavit before us, even if taken as true, do not warrant a departure from the general rule. It is doubtful whether the conduct of the bailiff and the foreman's action at the time of completing the verdicts would have caused persons of ordinary intelligence to acquiesce in verdicts which did not represent their conclusions, and when the jurors were polled in open court all of them except the three affiants who voted for plaintiff affirmed each of the verdicts as written. With respect to the foreman's visit to the scene of the accident and his report to the jury it is difficult to see how, in the light of the evidence relating to the collision, the duration of the traffic signals could have had a significant bearing on the outcome of the case.

The judgment is reversed as to Mrs. Abrahamson and affirmed as to the other plaintiffs.

Shenk, J., Traynor, J., Schauer, J., Spence, J., and McComb, J., concurred.

CARTER, J., Concurring and Dissenting.—I agree with the reasons given by the majority for reversing the judgment against Mrs. Abrahamson, but I can no longer assent to the dogma, so long parroted, that a juror's affidavit cannot be used to impeach his verdict.

The common formula that "a juror's testimony or affidavit is not receivable to impeach his own verdict is not correct as a statement of existing law, nor is it maintainable on any principle in this unqualified form." "It is a mere shibboleth and has no intrinsic signification whatever." (8 Wigmore on Evidence, Privileged Communications, § 2345, p. 663.) Notwithstanding Wigmore's acute analysis disapproving the form in which the rule exists and the automatic application of it by the courts (8 Wigmore on Evidence, Privileged Communications, §§ 2345-2356), the practice in both aspects, unfortunately, remains unchanged. This persistence may, per-

haps, be attributed to the one great difficulty with a rule that may be stated clearly and simply. When such a rule is completed and rounded, the corners smoothed and the content cohesive and coherent, it is likely to become a thing in itself, a work of art. It is then like a finely engineered bridge or a completed painting. One hates to disturb it. Even if knowledge and experience should demonstrate its obsolescence, one hates to tear it down because it has existed so long in its original design. I resist any such temptation and approach to the law.

The rule that a juror may not impeach his verdict is founded on three independent and general principles: (1) Privileged communications; (2) parol evidence rule; and (3) self-stultifying testimony. (8 Wigmore on Evidence, Privileged Communications, § 2345.)

The application of the principle of privileged communications between jurors is to insure the attainment of the jurors' constitutional purposes. It prohibits the disclosure of communications with a fellow juror upon the witness stand without the latter's consent. However, this principle is generally not significant primarily because what is said between jurors is seldom relevant at a new trial. (8 Wigmore on Evidence, Privileged Communications, § 2346.) Moreover, what is disclosed in the affidavit herein is not in the nature of a communication.

As for the doctrine of self-stultifying testimony, this principle forbids a juror from showing that a juror's behavior was not in the prescribed form which is necessary before a juror's actions may be valid. (8 Wigmore on Evidence, Privileged Communications, § 2345.) It is based on the principle ''nemo turpitudinem suam allegans audietur'' (a witness shall not be heard to allege his own turpitude). (8 Wigmore on Evidence, Privileged Communications, § 2345.) Wigmore convincingly establishes that this principle no longer exists in our law and should not be resurrected for present purposes. (8 Wigmore on Evidence, Privileged Communications, §§ 2352-2353.)

Therefore, the only principle on which we may validly reject the affidavits of the jurors herein is by the application of the parol evidence rule. This principle applies to the verdict of a jury like a will or a contract or a judgment.

Applying this principle it is evident that a juror's motives, beliefs, misunderstandings, intentions, and the like are immaterial. The verdict is the sole embodiment of the juror's acts.

"The policy which requires this is the same which forbids a consideration of the negotiations of parties to a contract leading up to the final terms as deliberately embodied in the deed, namely, the loss of all certainty in the verdict, the impracticability of seeking for definiteness in the preliminary views, the risk of misrepresentation after disclosure of the verdict, and the impossibility of expecting any end to trials if the grounds for the verdict were allowed to effect its overthrow." (8 Wigmore on Evidence, Privileged Communications, § 2349, p. 668.) This rule and policy is followed in California. (*Amsby* v. *Dickhouse,* 4 Cal. 102, 103; *People* v. *Wyman,* 15 Cal. 70, 75; *People* v. *Hughes,* 29 Cal. 257, 258, 263; see *People* v. *Reid,* 195 Cal. 249 [232 P. 457, 36 A.L.R. 1435].) Accordingly the statements by the jurors in their affidavits that the foreman told them that they would have to abide by the verdicts completed by him or they would never again be allowed to act as jurors are immaterial and may properly be excluded.

However, the policy of the parol evidence rule prohibiting the disclosure of a juror's motives, beliefs, misunderstandings, et cetera, does not compel a similar conclusion with respect to disclosure of irregularities and misconduct of jurors during their deliberations which constitute deviations from those certain formalities that are regarded as desirable policy-wise in the conduct of jury deliberations. The law of verdicts "must prescribe requisite formalities of conduct for the jurors, and define those informalities and irregularities which 'per se' invalidate the verdict. What those shall be is thus elsewhere in the law predetermined. The principle of the Parol Evidence rule then enters and declares that the lack of such formalities, for this as for every other legal act (whatever the respective required formality may be), is always proper to establish as a ground for declaring the act void. Whatever misconduct of the jury, therefore, is an irregularity fatal to the verdict may always be proved." (8 Wigmore on Evidence, Privileged Communications, § 2352, p. 683.)

Admittedly the distinction between motive and irregularity may sometimes be shadowy and difficult to perceive, but this offers no excuse for not attempting to remove the cloud of uncertainty. Moreover, it is readily apparent that a court by merely pronouncing the "shibboleth that a juror cannot impeach his verdict can never appreciate the vital distinction between impeaching" it by motive and impeaching it by irregular conduct. (8 Wigmore on Evidence, Privileged Communications, § 2349.)

If Wigmore is correct in his deductions that the prohibition against impeaching a jury verdict is founded on the policy behind privileged communications and the parol evidence rule, then this court should be ready to refer its rule to those ends, stating why those ends are desirable, what is given up to attain them, and whether they are worth the price. A reading of the majority opinion leaves one in doubt as to what end is being subserved. This doubt is permitted to grow because of the court's interpretation of the phrase ''irregularity in the proceedings,'' which appears in subdivision 1 of section 657 of the Code of Civil Procedure. The majority opinion declares that this phrase ''does not refer to jurors' affidavits and may not be regarded as permitting the use of such affidavits in situations where they would not otherwise be proper.''

In view of the principles heretofore stated the holding of the majority avoids the very question the court should decide, i. e., do the affidavits allege irregularity and misconduct which constitute deviations from those formalities that are regarded as desirable in jury deliberations? This is a policy question that has been left to the courts to work out case by case. (See Code Civ. Proc., § 657, subd. 1.) After due consideration this court might well conclude that the allegations in the affidavits do not state a deviation from the desired formalities, but such a conclusion should only be reached after careful thought.

The court should reconsider the matter clearly setting forth its reasons. This can only be accomplished by rejecting the automatic formula that a juror's testimony or affidavit is not receivable to impeach his own verdict.

I think the affidavits in the instant case are sufficient to establish misconduct of a character justifying the impeachment of the verdict and that a new trial should be granted as to all parties and all issues.