[Civ. No. 19459. First Dist., Div. One. July 26, 1961.]

FREDERIC W. WINNINGAR, Appellant, v. HOMER ELLSWORTH BALES III, Respondent.

Richard M. McGowen and Hugh F. Connolly for Appellant.

Popelka, Graham, Hanifin & Bonney for Respondent.

BRAY, P. J.—Plaintiff appeals from a judgment after jury verdict in favor of defendant Homer Ellsworth Bales III.

QUESTIONS PRESENTED

1. Alleged error in instructions: (a) contributory negligence; (b) "mere happening of an accident."

2. Should new trial have been granted because (a) of alleged prejudice of juror Macy; (b) of defendant's alleged statement in the presence of a juror concerning lack of insurance?

EVIDENCE

Plaintiff's automobile was stopped behind three or four cars which were stopped for a red light. He has no recollection of giving an arm signal prior to stopping. Defendant's automobile was following that of plaintiff. Defendant saw the line of cars ahead of him beginning to stop, but plaintiff at that time was not stopping. (Plaintiff contends that prior to the impact he had come to a complete stop for a period of "two changes of lights.") Defendant testified, "There was a slight distraction at the curb. I glanced over and glanced back and he [plaintiff] had his brakes on, and I put mine on," but "I

wasn't able to stop in time . . .'' Defendant stated that he was distracted for only a second.

1. *Instructions.* (a) Contributory Negligence.

Plaintiff contends that there was no evidence to justify the giving of instructions on contributory negligence. ''Cases involving rear-end collisions are legion. Although the contention is made often that the leader alone, or the follower alone, is guilty of negligence, in general it has been held that the case as presented by each party creates a question of fact for the jury and not a question of law for the court.'' (*Lowenthal* v. *Mortimer* (1954), 125 Cal.App.2d 636, 638 [270 P.2d 942].) However, if the evidence is such that from it only one inference reasonably can be drawn, then the question of contributory negligence becomes a matter of law, and this court would not be bound by a finding of the jury or the trial court to the contrary of that inference, but if more than one inference reasonably can be drawn, then the question is one of fact for the jury. (See 3 Witkin, California Procedure, p. 2251.)

Defendant testified that he was following plaintiff's car at a distance of one car length behind it and had been following it for two or three blocks; that there was a ''continuous string of cars'' in front of him and that the fast lane to his left was also filled with cars. Defendant saw the car in front of plaintiff begin to stop for the light. It was then that defendant turned his attention to the curb for only a second. When he again looked ahead, plaintiff had his brakes on and defendant then put his on, too late to stop. Plaintiff testified that he knew cars were following to his rear, but he could not recall giving an arm signal in bringing his car to a stop. He also asserted that he was fully stopped at the moment of impact.

Plaintiff contends that defendant had plenty of warning that plaintiff would have to stop and that an arm signal could not have prevented the collision and hence he was not guilty of contributory negligence in not giving it.

While the evidence as to traffic conditions is favorable to plaintiff's version, there is the fact that there is no evidence to contradict the implication that plaintiff failed to signal. Despite the possibility that the signal would have added nothing as a warning since the traffic conditions were already noticed by defendant (notice, by the way, to which defendant paid no attention), we cannot say as a matter of law that a reasonable inference could not be drawn that an arm signal given as

plaintiff started to stop would not have been more effective as a warning to defendant than the traffic conditions which remained unaltered for a span of blocks and which did not seem to warn defendant. Particularly is this so as plaintiff's car was moving when defendant glanced away, and defendant's distraction was for only a second. Therefore we cannot say as a matter of law that a failure to signal did not contribute to the accident. As a party to an action has a right to instructions on his theory of the case if it is reasonable and finds support in the pleadings and the evidence, or in any inference which properly may be drawn from the evidence (*Edgett* v. *Fairchild* (1957), 153 Cal.App.2d 734, 738 [314 P.2d 973]), the court did not err in instructing on this subject.

(b) The Mere Happening of an Accident.

The court instructed that the mere happening of an accident did not prove that it was caused by the negligence of anyone. Plaintiff did not request or offer any instruction on res ipsa loquitur. "[I]n the absence of a request for instructions on the doctrine of res ipsa loquitur, it is not reversible error to give the instruction on the mere happening of an accident if the application of the doctrine depends upon the determination of disputed facts. (*Barrera* v. *De La Torre,* 48 Cal.2d 166, 170 et seq. [308 P.2d 724].) In such a case a *request* for appropriate instructions on the doctrine is essential so that the court may be apprised of the plaintiff's reliance on it and have an opportunity to explain the relationship between the doctrine and the instruction on the mere happening of an accident. In the absence of such a request, the only situation in which the giving of the challenged instruction was held to constitute error was where the res ipsa loquitur inference arose as a matter of law from facts conceded by the defendant. (*Jensen* v. *Minard,* 44 Cal.2d 325, 329 [282 P.2d 7].)" (*Phillips* v. *Noble* (1958), 50 Cal.2d 163, 166-167 [323 P.2d 385].)

In *Guerra* v. *Handlery Hotels, Inc.* (1959), 53 Cal.2d 266 [1 Cal.Rptr. 330, 347 P.2d 674], the Supreme Court is highly critical of the "mere happening" instruction even in cases where the doctrine of res ipsa loquitur is not applicable as a matter of law, but held that the giving of it was not prejudicial in that case because the question of the plaintiff's contributory negligence was raised. This is not a case where the doctrine of res ipsa loquitur applies as a matter of law. The inference of plaintiff's contributory negligence prevents the doctrine from applying. The cases cited by plaintiff such

as *Merry* v. *Knudsen Creamery Co.* (1949), 94 Cal.App.2d 715 [211 P.2d 905], holding that when a moving car hits a stopped car the doctrine of res ipsa loquitur will apply, are not in point here, for the reason that in none of those cases was there any question of contributory negligence on the part of any of the plaintiffs. As said in 37 California Law Review, pages 204-205, "It is only where the plaintiff is shown to have been stationary, or his own fault is eliminated by some other specific evidence, that res ipsa loquitur can apply."

There was no prejudicial error in giving the "mere happening" instruction.

2. (a) Alleged Prejudice of Juror.

 Plaintiff after filing notice of motion to move for new trial filed the affidavits hereafter discussed. Defendant filed a motion to strike these affidavits. At the hearing of the motion for new trial the court first considered the motion to strike. The court stated that it had read the affidavits, or at least some of them. Considerable argument was had concerning their admissibility. During the argument the contents of the affidavits were discussed at some length. After argument on other points raised by plaintiff, both motions were submitted. Later the court ordered the affidavits stricken and a new trial denied. As the affidavits were stricken, the court thereby found, in effect, that the affidavits did not show that juror Macy misrepresented her state of mind on *voir dire* examination. If this finding is correct, the affidavits were inadmissible, and hence properly stricken. (See *People* v. *Webb* (1956), 143 Cal.App.2d 402, 420 [300 P.2d 130].)

 Affidavits may be used to impeach the verdict of the jury not only when within the general rule, that is, where the verdict was reached by lottery (Code Civ. Proc. § 657, subd. 2), but also "where a juror could have been challenged for cause on *voir dire* but avoided such challenge by testifying falsely as to his state of mind. In such a case the disqualification had its origin before the jury was impanelled." (*People* v. *Webb, supra,* 143 Cal.App.2d at p. 419; see also *Crespo* v. *Cook* (1959), 168 Cal.App.2d 360 [336 P.2d 31].)

 In examining the first ten jurors on *voir dire* plaintiff asked as to their state of mind concerning the awarding of damages to a person injured solely through the negligence of another; that damages if proved are a matter of right and not of gift, and whether they had any prejudice against an injured party seeking redress in court, and whether, if the

evidence warranted it, they would award plaintiff $50,000, etc. When Mrs. Macy's turn came to be examined she was asked if she had heard the questions asked the other jurors. She said she had. She was then asked if her answers would be substantially the same as those made by the other jurors and if she felt she could be a fair and impartial juror. She replied affirmatively.

The affidavit of Jenny D. Fletscher, one of the jurors, was to the effect that during deliberations she heard Mrs. Macy (who stated when polled that she voted for the verdict in favor of defendants), state "that as far as she was concerned his type of accident was an everyday occurrence because drivers always glance out of their windows . . . that any one of the jurors might have done what Mr. Bales did that day and therefore he should not be held to be negligent. She said she would hate to see a young kid his age held responsible for large damages if there was no insurance . . . [T]he case probably would not have come to Court if Mr. Bales had insurance." Everett Faber, one of the jurors, stated that he heard Mrs. Macy make a statement to the effect that these things are generally settled before they get to court. There was discussion to the effect that this type of accident could happen to anyone, and therefore defendant should not be held responsible.

Mrs. Macy's affidavit does not specifically deny the statements in the above affidavits, except that she states that at no time during the trial did she hear any mention made by defendant that he did or did not have insurance, nor was insurance mentioned or considered by the jury during its deliberations. She was not informed as to whether defendant was or was not insured.

Plaintiff contends that these statements made to the jury by Mrs. Macy prove that when she answered on *voir dire*, after being told the type of accident, she had preconceived opinions against plaintiff's case because of the type of accident or because of defendant's age and financial vulnerability.

Taking as true the affidavits of jurors Fletscher and Faber, the statements made by Mrs. Macy in the jury room do not show that her statements on *voir dire* were false or that at that time she had any prejudice against plaintiff or his case or bias towards defendant or his case. "Although occurrences during the trial and the deliberation of the jury may tend to prove the existence of prejudice (*Estate of Mesner,* 77 Cal.App.2d 667, 676 [176 P.2d 70]), the bias

essential to permit proof by a juror's affidavit must exist at time of *voir dire,* and must have been concealed on that examination [citations].'' (*Crespo* v. *Cook, supra,* 168 Cal.App.2d at p. 362.)

The situation in this case is entirely different from that in *Estate of Mesner* (1947), 77 Cal.App.2d 667 [176 P.2d 70], where the statements made in the jury room by a juror were such as to indicate without question that at the time of his *voir dire* examination the juror ''entertained a state of mind which rendered it doubtful whether he would or could be guided solely by the evidence produced at the trial.'' (Pp. 675-676.)

''To allow verdicts to be defeated because of improper remarks of a juror in the course of their deliberations upon the issues under consideration would be calculated to discourage free discussion which is deemed essential to the development of a full knowledge and a ripe judgment of the jury.'' (*Maffeo* v. *Holmes* (1941), 47 Cal.App.2d 292, 295 [117 P.2d 948].) ''Because it is necessary to prevent instability of verdicts and harassment of jurors, a juror should be permitted to impeach a verdict only in instances 'violating the plainest principles of justice' (*Kollert* v. *Cundiff,* 50 Cal.2d 768, 773-774 [329 P.2d 897]).'' (*Brown* v. *Guy,* 170 Cal.App. 2d 256, 263 [338 P.2d 586].) In *Kollert* v. *Cundiff* (1958), 50 Cal.2d 768, 773-774 [329 P.2d 897], the court, having in mind that jurors in deliberations occasionally make statements which are to some degree improper under the circumstances, stated that the problems which thereby arise involve ''the balancing of two conflicting policies. It is, of course, necessary to prevent instability of verdicts, fraud, and harassment of jurors, and, on the other hand, it is desirable to give the losing party relief from wrongful conduct by the jury. The court in *McDonald* v. *Pless,* 238 U. S. 264, 267-269 [35 S.Ct. 783, 59 L.Ed. 1300], after discussing these policies and stating that the wrong to the individual was the lesser of two evils, concluded that as a general rule the affidavits should be excluded but that there might be instances where the rule could not be applied without 'violating the plainest principles of justice.' '' The striking of the affidavits in our case does not violate any principle of justice. Taking Mrs. Macy's statements with her *voir dire* examination, they do not tend to prove any false statement or concealment by her, or the existence of a prejudicial state of mind at the time of her examination.

It is interesting to note that the only two jurors who claimed to have heard Mrs. Macy's statements were not influenced by them as they voted against the verdict for defendant.

(b) Defendant's Remark Concerning Insurance.

Mrs. Gertrude E. Turner's affidavit alleges that she was a spectator at the trial on the second day of the trial, and before the opening of the court, in the presence of about half the impaneled jurors she asked defendant if he was covered by insurance in this case, and he said that he was not. Juror Mary Jane Doyle's affidavit corroborates that of Mrs. Turner. Eight other jurors denied hearing such statement being made or that any mention of insurance occurred in the jury room. The affidavits of jurors Fletscher and Faber above mentioned are silent upon the subject. Defendant's affidavit admits that when asked by Mrs. Turner as to insurance, he said that he did not have any, but he states that this conversation was outside the courtroom and no other jurors were present. Mrs. Doyle voted against the verdict for defendant. Plaintiff concedes that there is no authority in California to support his contention that defendant's action constituted an "[i]rregularity in the proceedings of the . . . adverse party . . . ." (Code Civ. Proc. § 657, subd. 1.) Plaintiff refers to an annotation in 62 American Law Reports 2d 295, 332. The cases there mentioned turn upon whether the remarks made in the presence of the jurors would have prejudiced them in favor of the party making the remarks. While, of course, a party should not discuss the question of insurance in the presence of any juror, it cannot be said that defendant's statement in anywise influenced the verdict. Although Mrs. Turner and Mrs. Doyle say the statement was made in the presence of the jury, no juror other than Mrs. Doyle says he or she heard it. Mrs. Doyle does not claim to have disclosed the statement to the other jurors. In fact eight of the jurors denied hearing it. The statement had no effect on Mrs. Doyle for she voted for plaintiff. In order to impeach a jury's verdict prejudice must be shown from the alleged misconduct. (*Watson* v. *Los Angeles Transit Lines* (1958), 157 Cal.App.2d 112, 116 [320 P.2d 890]).

In *Bramble* v. *McEwan* (1940), 40 Cal.App.2d 400 [104 P.2d 1054], the respondent was said to have made remarks to the mother and sister of a juror for the purpose of influencing the juror. While the evidence failed to show that the remarks were communicated to the juror, the court said, in

effect, that even if they were communicated, the juror voted for the other party, and hence there could be no prejudice.

The trial court did not abuse its discretion in denying the motion for new trial.

The judgment is affirmed.

Tobriner, J., and Duniway, J., concurred.