[Crim. No. 21839. June 21, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
LARRY ROMERO, Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Ruth Young, Assistant State Public Defender, and Gayle Guynup, Acting Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Roger E. Venturi and Ramon M. de la Guardia, Deputy Attorneys General, for Plaintiff and Respondent.

Neal P. McCaslin, District Attorney (Solano), Michael E. Nail, Senior Chief Deputy District Attorney, and John R. Vance, Jr., Deputy District Attorney, as Amici Curiae on behalf of Plaintiff and Respondent.

## Opinion

**MOSK, J.**—We are confronted here with a factual situation worthy of Abbott and Costello but which, regrettably, has untoward legal consequences. The jury found defendant guilty of burglary in the second degree on count *one* but not guilty on count *two*, an identical charge relating to a separate burglary, and judgment was entered accordingly. Nearly two months later, six of the jurors stated in affidavits that the jury unanimously intended to convict on count *two* and acquit on count *one*. The trial court denied defendant's motion for a new trial on count one, and he appealed. "After giving this matter much consideration, we have come to the conclusion that we should do nothing." (*People v. Williams* (1968) 264 Cal.App.2d 885, 889 [70 Cal.Rptr. 882].)

### Facts

Defendant was charged with two counts of burglary. (Pen. Code, § 459.) The consolidated information charged defendant in count one with the daytime burglary of a residence in Escalon (the Brumley burglary). Lealon "Dusty" Brumley, who lived at the residence, testified at trial and identified defendant as the man he saw fleeing when he returned to his home on the morning of February 13, 1979. Defendant introduced the testimony of an alibi witness and presented evidence tending to show that the burglary was committed by someone else.[1] He also pointed out inconsistencies between Brumley's earlier reports and his trial testimony.

Count two of the information charged defendant with the February 25, 1979, burglary of a business located in Stockton (the Autohaus burglary). Stockton police units were dispatched to the location of the foreign car repair shop at 10:12 p.m. after a silent alarm was activated. They arrived at approximately 10:15 p.m. and discovered that the door to the shop had been pried open. Finding defendant inside the building, they arrested him. His story was that he was on his way to a nearby store when he noticed the pried-open door and was inside investigating when police arrived.

---

[1]The defense sought to implicate a Robert Martinez, but Martinez invoked the privilege against self-incrimination and was not questioned about his involvement in the offense in the presence of the jury. The defense offered to show that Martinez told fellow jail inmates that he had committed the offense, but the court found these witnesses "untrustworthy" and refused to allow their testimony.

Jury trial began on May 22, 1979. The jury retired after lunch on May 31, and returned with its verdict in less than two hours. The first verdict form read: "We, the Jury in the above entitled cause, find the defendant, LARRY ROMERO guilty of a violation of Section 459 of the Penal Code of the State of California, to-wit: BURGLARY, a felony, as charged and set forth in Count One of the Amended Information on file herein; and further we fix the degree, thereof, as Burglary in the Second Degree." This verdict form was signed and dated by the foreman, who erroneously wrote "Acount # 2 [*sic*]" at the bottom of the form.

The second form read: "We, the Jury in the above entitled cause, find the defendant, LARRY ROMERO not guilty of a violation of Section 459 of the Penal Code, of the State of California, to-wit: BURGLARY, a felony, as charged and set forth in Count Two of the Amended Information on file herein." This form was also dated and signed by the foreman, but he erroneously wrote "Count 1" at the bottom.[2]

The clerk read the count one verdict. The court noticed the erroneous "Acount 2" notation at the bottom of the count one form and questioned the foreman, who replied, "I had a Count 1 and a Count 2. I separated them." The court asked: "Just for your own memoranda?" The foreman answered "yes." The court did not pursue the matter further, but directed the clerk to record the guilty verdict on count one and read the verdict on count two. The jury was polled as to each count, and the verdicts were confirmed by each juror. The jury was then dismissed.

Nearly two months later defendant moved for a new trial, submitting affidavits from the foreman and five other jurors which stated that no juror raised a hand for a guilty verdict on the Brumley burglary and that all jurors raised their hands for a not guilty verdict on that charge.[3] The court denied the motion and sentenced defendant on the burglary charge to two years in state prison, the median term, plus a one-year enhancement for a prior felony conviction. This appeal followed.

[2]The record also contains a handwritten note to the jury by the judge, saying, "Count One is the Brumley burglary at Escalon; Count Two is the Autohaus burglary at Stockton." This reminder apparently had no salutary effect on the foreman's ability to use the correct form.

[3]The affidavits were apparently prepared and typed by the defense; except for that of the foreman, all are identically worded. The foreman's affidavit states, "I recorded a 'not guilty' verdict for the Brumley burglary on one of the verdict forms by signing my name." Unfortunately that is not true; if the foreman had done so, the case would not be here.

## Discussion

We start with the obvious premise that under the double jeopardy clause of the United States Constitution (U.S. Const., 5th Amend.), defendant cannot be retried on the charge of which he was acquitted, count two. "The fundamental nature of this rule [barring retrial after acquittal] is manifested by its explicit extension to situations where an acquittal is 'based upon an egregiously erroneous foundation.'" (*Sanabria* v. *United States* (1978) 437 U.S. 54, 64 [57 L.Ed.2d 43, 54, 98 S.Ct. 2170].) We are thus left with a number of alternatives, none of which, we candidly concede, is perfect.

Defendant urges that we admit the jurors' affidavits to prove that the verdict on count one was not the verdict the jury agreed upon, and then remedy the problem by granting a new trial on that count. This procedure, however, would result in retrial of a count on which the evidence was manifestly unconvincing, and thus give defendant, in all probability, an undeserved double acquittal.[4]

Another suggested alternative is that we admit the jurors' affidavits and allow the trial court to correct a "clerical error" by transposing the two verdicts. Although this alternative has attractive aspects, we believe, for reasons to be discussed, that it poses an unacceptable risk of interference with duly rendered jury verdicts under the guise of correcting such "clerical errors."

We conclude, rather, that the soundest course is to exclude the affidavits, involving as they do essentially subjective reasoning on the part of the jurors. This solution has the virtues of both simplicity and finality: it promotes a "bright line" standard and, on the facts of this case, it results in conviction on one charge of burglary, a result the jury manifestly intended to reach.

### I. The "Subjective-objective" Dichotomy

At common law jurors could not impeach their verdicts. (*People* v. *Hutchinson* (1969) 71 Cal.2d 342, 346-347 [78 Cal.Rptr. 196, 455 P.2d

---

[4]All concerned appear to agree that the evidence was stronger on the Autohaus burglary—defendant was apprehended inside a locked commercial building after 10 p.m.—than on the Brumley burglary. The prosecutor reportedly admitted that the not guilty verdict on the Autohaus burglary "put a question on his mind, since he felt that was the evidentially stronger of the two. And the guilty verdict on the Brumley case, on the weaker of the two, sort of confused him."

132].) "'The problem involves the balancing of two conflicting policies. It is, of course, necessary to prevent instability of verdicts, fraud, and harassment of jurors, and, on the other hand, it is desirable to give the losing party relief from wrongful conduct by the jury.'" (*Id.* at p. 348, quoting from *Kollert v. Cundiff* (1958) 50 Cal.2d 768, 773-774 [329 P.2d 897].) In *Hutchinson*, we found that the distinction drawn in the Evidence Code[5] "between proof of overt acts, objectively ascertainable, and proof of the subjective reasoning processes of the individual juror, which can be neither corroborated nor disproved . . . has been the basic limitation on proof set by the leading decisions allowing jurors to impeach their verdicts." (71 Cal.2d at p. 349.) This dichotomy and the limitation of impeachment evidence to "proof of overt conduct, conditions, events, and statements, as suggested by the commentators, vitiates the major policy arguments supporting the common law rule." (*Id.* at pp. 349-350.) We concluded, "The only improper influences that may be proved under section 1150 to impeach a verdict, therefore, are those open to sight, hearing, and the other senses and thus subject to corroboration." (*Id.* at p. 350.) We felt confident that admission of jurors' affidavits within the limits set by section 1150 "will not result in the widespread upsetting of verdicts." (*Ibid.*)

There is some difference, however, between *Hutchinson* and the situation we face here. *Hutchinson* dealt with "improper influences" on the jury or misconduct that might have affected deliberations, such as intervention by the bailiff in jury proceedings. In the case at bar, by contrast, an asserted clerical error in transcribing the verdict was involved.

## II. *"Clerical Error"*

We first discuss cases in which it appeared that clerical errors of some sort occurred in the rendition of the verdict, mindful that the line of demarcation between such clerical errors and what are termed "deliberative" errors is sometimes unclear.

---

[5]Evidence Code section 1150 reads: "(a) Upon an inquiry as to the validity of a verdict, any otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly. No evidence is admissible to show the effect of such statement, conduct, condition or event upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined.

"(b) Nothing in this code affects the law relating to the competence of a juror to give evidence to impeach or support a verdict."

In *People* v. *Grider* (1966) 246 Cal.App.2d 149 [54 Cal.Rptr. 497], the jury was given three forms of verdict: guilty of robbery in the first degree, guilty of robbery in the second degree, and not guilty. After the jury had deliberated for a little over an hour, the foreman informed the court that a verdict had been reached. The clerk read the verdict, which found the defendant guilty of robbery in the second degree. It had been signed by the foreman. After the reading of the verdict the jurors were asked if it was their verdict and they replied "yes." There was no request for a poll, the judge ordered the clerk to enter the verdict in the minutes, and after thanking the jurors for their services he discharged the jury and adjourned the court. (*Id.* at p. 150.)

The verdict was entered in the minutes of the court by the clerk at 3:30 p.m. At 3:39 p.m. the judge reconvened the court with all members of the jury present, saying he had been "'informed that there may have been a mistake on the verdict signed.'" (*Ibid.*) There had been: it turned out that as the jury was dispersing into an adjoining foyer after it had been discharged, the prosecutor asked one of the jurors, "How did you ever find second degree in this case?" The juror replied, "We didn't. We found first degree." Upon hearing this, the prosecutor told the bailiff to stop the jury and have it reconvene. As the bailiff circulated among the jurors in the hallway, he heard a juror remark, "That wasn't our verdict. The Foreman just signed the wrong verdict." (*Id.* at p. 151.)

The clerk reread the verdict finding the defendant guilty of second degree robbery, and the judge ordered a poll of the jury on the question "'[I]s this individually the verdict you voted for, that is, robbery in the second degree ...?'" Each juror answered "no." Upon questioning by the trial judge, the foreman stated that he had made a mistake in reading and signing the first verdict. (*Id.* at pp. 150-151.) The judge then directed the jury to continue its deliberations and the jury was left in the courtroom for this purpose. At 3:50 p.m. the jury returned a second verdict of robbery in the first degree. The jurors were polled as to whether they had individually voted for this second verdict, and each answered "yes." The judge then ordered another poll, and asked each juror whether this second verdict was the one he or she voted for originally. Again each juror answered in the affirmative. The foreman also stated that the signing of the first verdict was a clerical error. The judge entered the new verdict conditionally, and later ruled that the second verdict was a correction of a clerical error made by the foreman

and ordered the first verdict set aside, but only on condition that the first degree robbery conviction was upheld on appeal. (*Id.* at p. 151.)

The Court of Appeal reversed, reasoning that """"With the assent of the jury to the verdict as recorded, their functions with respect to the case cease, and the trial is closed"; and "after the verdict is received and the jury discharged, . . . the control of the jury and the court over such verdict is at an end. The court cannot alter it, nor can the jury be called to alter or amend it. As well might any other twelve men be called to alter it as the men who were jurors. The office of a juror is discharged upon the acceptance of his verdict by the court."""" (*Id.* at pp. 152-153, quoting from *People* v. *Lee Yune Chong* (1892) 94 Cal. 379, 385 [29 P. 776].)

The facts of *Grider* are virtually identical to those of the present case; if anything, *Grider* was a more compelling case for correcting "clerical error" than this. In *Grider* the "error" resulted in an undeserved windfall for the defendant, a verdict different from that which was intended. Here, defendant stands convicted of one count of second degree burglary, which is the very result the jury meant to reach. Moreover, in *Grider* the miscue was caught and rectified in a matter of minutes; here, the error, if any there was, was not brought to the court's attention for almost two months. It goes without saying that in two months memories may fail, and in the interim, ex parte contact with former jurors by dissatisfied litigants may encourage jurors to falsify or invent facts.[6] Finally, in *Grider*, every available safeguard to ensure that the first verdict was in fact error was taken: *each* juror stated that he or she had voted for the second verdict, and each also assured the judge that the second verdict was the one he or she had voted for originally. Here, on the other hand, we have only six affidavits submitted two months later stating that the jurors voted in the jury room to acquit on the Brumley burglary. This is an unconvincing demonstration of "clerical error."

Similarly, in *People* v. *Williams* (1968) *supra*, 264 Cal.App.2d 885, 889, "It became apparent that, as one juror put it, the jury 'had it back-

---

[6]It cannot be gainsaid, however, that the mistake should have been caught much earlier. First, the inclusion of simple distinguishing references on the verdict forms—e.g., identifying one count as the "Brumley burglary" and the other as the "Autohaus burglary"—might have prevented the problem. Second, the trial judge apparently noticed the foreman's erroneous notations at the bottom of each form; but he then accepted the foreman's incorrect explanation, failing to pursue the simple inquiry that would have revealed the confusion.

wards.' They thought Sands was the victim named in count VI." Apparently, the jury meant to convict the actual count VI, but was deadlocked on the actual count V; it returned a mistaken "guilty" verdict on count V, however, and reported a deadlock on count VI. The two counts charged similar offenses. Writing for the court, Presiding Justice Kaus adopted an eminently sensible solution: "After giving this matter much consideration, we have come to the conclusion that we should do nothing. Whether that would be the proper course in similar, but not identical, situations is beside the point. Unquestionably there was sufficient evidence on count V (Sands). If we reversed, we would set aside a verdict on the unsworn statements of the foreman and a few fellow jurors. This would violate the principle against impeachment of verdicts by the jury. [Citation.] The values protected by this principle have been thought to be sufficiently high even in situations where an injustice may well have resulted from its application. Certainly we should not ignore it where no possible prejudice results." (*Ibid.*)

The same disposition is appropriate here. We are disinclined to set a verdict aside on belated statements of the foreman and a few fellow jurors. The policy against impeachment of jury verdicts is too important to be disregarded "where no possible prejudice results." Nor do we think the *Hutchinson* holding, which was subsequent to *Grider* and *Williams*, compels a different result: as pointed out above, *Hutchinson* dealt with misconduct and improper influences upon the jury, not with verdicts that may have been mixed up because of clerical error.

A strict rule against belated impeachment in cases of alleged clerical error, moreover, comports with settled law in California. After the verdict is received and the jury discharged, the court cannot alter or "correct" the verdict. (*People v. Lee Yune Chong, supra*, 94 Cal. 379, 385; Witkin, Cal. Criminal Procedure (1963) § 532, p. 545.) Moreover, the power to reconsider a verdict is subject to the limitation that a defective verdict of acquittal cannot be reconsidered. (Pen. Code, § 1161; Witkin, Cal. Criminal Procedure (1963) § 533, p. 546.) In addition, Penal Code section 1164 embodies the no-correction rule: "When the verdict given is such as the court may receive, the clerk, or if there is no clerk, the judge or justice, must record it in full upon the minutes, and if requested by any party must read it to the jury, and inquire of them whether it is their verdict. If any juror disagrees, the fact must be entered upon the minutes and the jury sent out; but if no disagreement is expressed, the verdict is complete, and the jury must be discharged from the case." As the court observed in *Grider* (246 Cal.App.2d at

p. 152), "The words of the statute are clear and unequivocal." Once the jury was polled in the present case, and each member thereof orally assented to the verdict and the jury was discharged, the trial of the defendant was complete and the court had no jurisdiction to recall the jury for further proceedings. (*Id.* at p. 154.) Any such proceedings would have been nullities; the court would have lacked jurisdiction to acquit on the charge of which defendant was convicted. (*Ibid.*)[7] (Cf. *People* v. *Powell* (1950) 99 Cal.App.2d 178, 181 [221 P.2d 117] [error discovered before jury left box; proper to rectify it].)

### III. *"Deliberative Error"*

In cases of a "deliberative error" which appears to produce a mistaken or erroneous verdict, the result has almost invariably been to bar impeachment of the verdict. Two recent cases dramatically illustrate this principle.

In *People* v. *Peavey* (1981) 126 Cal.App.3d 44 [178 Cal.Rptr. 520], defendant was found guilty of second degree murder. The clerk read the verdict and asked the jurors collectively if the verdict was theirs. They responded affirmatively. The jury was polled; as the clerk called the jurors by name, each indicated that the verdict was his or hers. The name of juror number nine, Mrs. DuGais, was read twice, and she responded "yes" on both occasions. (*Id.* at p. 46.) The jury was ordered discharged. Immediately thereafter, and before any of the jurors had left the jury box, juror nine blurted out, "Can I change? I'm sorry. I gotta go not guilty. I know it messes up everything, but in my mind I just can't. I knew I was going to do that, but I'm sorry, I just can't." (*Id.* at p. 47.) On appeal, the court rejected the attempt to impeach the verdict, relying on *People* v. *Lee Yune Chong, supra*, 94 Cal. 379, 385, and *People* v. *Grider, supra*, 246 Cal.App.2d 149. The *Peavey* court correctly reasoned, "In the case at bar, the verdict given was certainly 'such as the court may receive' under the terms of Penal Code section 1164. It

---

[7]Penal Code section 1181, subdivision 4, cited by defendant, does not mandate a different result. It provides that a court may grant a new trial when the verdict has been decided "by any means other than a fair expression of opinion on the part of all the jurors." Here, the jurors were polled and all agreed to the verdict. Defendant argues that a "miscarriage of justice has occurred due to the mistake in this case" justifying a new trial under the cited subdivision, although he admits that most decisions discussing section 1181, subdivision 4, involve instances of jury misconduct. In fact, defendant does not cite any case of "mistake" in which this subdivision was invoked; and, since no miscarriage of justice resulted—the jury clearly found defendant guilty of one charge—there is no reason to overturn the judge's denial of the motion here.

was complete in every way, and signified appellant's guilt. . . ." (126 Cal.App.3d at p. 49.)

Similarly, in *People v. Hall* (1980) 108 Cal.App.3d 373 [166 Cal. Rptr. 578], three jurors signed declarations stating that they meant to convict defendant of simple assault, a misdemeanor, instead of assault by force, a felony. The court held that it had been proper to exclude the declarations. It rejected "appellant's theory that a *mistake* on the part of jurors constitutes misconduct which can be evidenced by the affidavits of the jurors themselves." (*Id.* at p. 379.) (Italics in original.) "The courts have been firm, however, in precluding affidavits which do no more than characterize the affiant's own state of mind [citation] or the state of mind of other members of the jury [citations]." (*Id.* at p. 380.) (See also *People v. Elkins* (1981) 123 Cal.App.3d 632 [176 Cal.Rptr. 729] [no error in refusing to admit declarations; their subject matter, an alleged misstatement of law by one juror, involved subjective mental processes].)[8]

The purported error alleged here involved the subjective mental processes of the jurors, and thus the affidavits did not compel a new trial under *Hutchinson.* Although the affidavits asserted that the jurors "raised their hands" for a not guilty verdict, what essentially happened was that the jurors apparently *thought* they were convicting defendant on one count when they were polled, but they were really convicting him on another. Such "thoughts" do not rise to the level of "improper influences . . . open to sight, hearing, and the other senses and thus subject to corroboration." (*Hutchinson, supra*, 71 Cal.2d at p. 350.) To grant a new trial in these circumstances would permit enterprising but dissatisfied litigants to cull the jurors' deliberations for "clerical" errors, then artfully draft affidavits aimed at exploiting their mistaken beliefs. The stability of verdicts stressed in *Hutchinson* is too important to be so easily tampered with.

---

[8]Defendant's reliance on *Krouse v. Graham* (1977) 19 Cal.3d 59, 79-82 [137 Cal.Rptr. 863, 562 P.2d 1022], is misplaced. There the defendant offered declarations of four jurors to the effect that the verdict had been inflated to take into account the amount plaintiff would probably have to pay in attorney's fees. This court found the declarations in question "inconclusive," saying that they "could be construed as conduct reflecting only the mental processes of the declarant jurors, for they assert that certain unnamed jurors 'commented' on the subject of attorneys' fees, and that the jurors 'considered' the matter in determining the 'final compromise award.'" We directed the trial court to reconsider the motion for new trial, admitting the declarations and "weighing them in conjunction with all other relevant matters." Such a course of action is unnecessary here, since it appears the trial judge has already weighed the affidavits in considering and rejecting defendant's motion for new trial.

## IV. *No Miscarriage of Justice Resulted*

Even if, arguendo, we were to agree that a technical error appears here, this would be the paradigm case for invocation of article VI, section 13, of the California Constitution: no judgment should be set aside or new trial granted for an error in procedure unless, from the whole record, the court can say there has been a miscarriage of justice. This defendant was charged with two counts of burglary; he was convicted of one count of burglary, and the evidence is overwhelming that he was guilty of at least one count of burglary. Any claim that the collateral consequences of conviction on one count differ from the consequences of conviction on the other is, on this record, purely speculative.[9] There was no miscarriage of justice.

## V. *Other Assignments of Error*

Defendant raises numerous other assignments of error pertaining to the Brumley burglary. Since the Court of Appeal did not reach these issues, having reversed the trial court on other grounds, we will allow that court to consider these issues in the first instance, and therefore retransfer the cause to the Court of Appeal for determination of these issues. (See *Andrews v. Agricultural Labor Relations Bd.* (1981) 28 Cal.3d 781, 796 [171 Cal.Rptr. 590, 623 P.2d 151]; *Arnel Development Co. v. City of Costa Mesa* (1980) 28 Cal.3d 511, 525 [169 Cal.Rptr. 904, 620 P.2d 565].)

Richardson, J., Newman, J., Scott, J.,* and Poché, J.,* concurred.

**BIRD, C. J.**—I must respectfully dissent from an opinion which lets stand a conviction for a crime of which the jury found the accused not guilty.

### I.

In the courts of virtually all of our sister states and the federal circuits, juror affidavits are admissible to prove that a recorded verdict does not conform to the actual verdict agreed to by the jury after deliberations. This doctrine is so well settled that a complete listing of the

---

[9]In this connection, we observe that there is no evidence defendant's sentence was affected by the alleged mistake.

*Assigned by the Chairperson of the Judicial Council.

cases so holding would fill a page.[1] The legal writers are in accord with these decisions. (See, e.g., 8 Wigmore, Evidence (McNaughton rev.ed. 1961) § 2355, pp. 718-721; Model Code of Evid., rule 301, com. a, p. 175.)

As articulated by the 10th Circuit Court of Appeals, the rule regarding correction of such clerical errors is that "jurors are competent witnesses for the purpose of showing that through oversight, inadvertence, or mistake respecting the substance of the verdict returned into court, [it] was not the verdict on which agreement was actually reached in the jury room." (*Young* v. *United States* (10th Cir. 1947) 163 F.2d 187, 189, cert. den., 332 U.S. 770 [92 L.Ed. 355, 68 S.Ct. 83].)

In *Drainage Dist. No. 2* v. *Extension Ditch Co.* (1919) 32 Idaho 314 [182 P. 847, 850-851], the court commented similarly: "[A] court may permit the jury to fortify its verdict or to show by the affidavits of the jurors the verdict which they found and intended to return, and this may be done after they have been discharged. [Citations.]"

The rationale for this doctrine was cogently explained in an early opinion by the Supreme Judicial Court of Massachusetts. "[T]he mistake which is proved by the testimony of the jurors ... is not one connected with the consultations of the jury, or the mode in which the verdicts were arrived at or made up. No fact or circumstance is offered to be proved, which occurred prior to the determination of the case by the jury and their final agreement on the verdict which was to be rendered by them. But the evidence of the jurors is offered only to show a mistake, in the nature of a clerical error, which happened after the deliberations of the jury had ceased, and they had actually agreed on their verdict. *The error consisted, not in making up their verdict on wrong principles or on a mistake of facts, but in an omission to state correctly in writing the verdict to which they had, by a due and regular course*

[1] See, inter alia, *Continental Baking Co.* v. *Old Homestead Bread Co.* (10th Cir. 1973) 476 F.2d 97, 109-110; *Fox* v. *United States* (5th Cir. 1969) 417 F.2d 84, 85-89; *Freid* v. *McGrath* (D.C. Cir. 1943) 135 F.2d 833, 834; *Hamburg-Bremen Fire Ins. Co.* v. *Pelzer Manuf'g. Co.* (4th Cir. 1896) 76 F. 479, 481-482; *Rose* v. *Thau* (1974) 45 App.Div.2d 182 [357 N.Y.S.2d 201, 203-204]; *Moulton* v. *Staats* (1933) 83 Utah 197 [27 P.2d 455, 459]; *McCabe Lumber Co.* v. *Beaufort County Lumber Co.* (1924) 187 N.C. 417 [121 S.E. 755, 755-756]; *Carlson* v. *Adix* (1909) 144 Iowa 653 [123 N.W. 321, 321-322]; *Peters* v. *Fogarty* (1893) 55 N.J.L. 386 [26 A. 855, 855-856]. See also 76 American Jurisprudence Second, Trial, section 1225, page 179; Annotation (1968) 18 A.L.R.3d 1132, 1137-1138, section 3 and cases cited.

The majority inexplicably ignore these authorities for the admissibility of juror affidavits to prove clerical error in the rendering of a verdict.

*of proceeding, honestly and fairly arrived.* ... [¶] ... No considerations of public policy require that the uncontradicted testimony of jurors to establish an error of this nature should be excluded." (*Capen & others* v. *Inhabitants of Stoughton* (1860) 82 Mass. (16 Gray) 364, 367-368, italics added.)

Thus, the *Capen* court distinguished between deliberative error, involving the decision-making processes which lead to the jury verdict, and mere clerical error, involving a mistake in the reporting of the verdict to the court. Where only a clerical error has occurred, the policy considerations which may weigh against the impeachment of jury verdicts in other contexts are not applicable. Admitting juror affidavits to prove a clerical error does not infringe upon the sanctity with which jury verdicts are cloaked. (See *People* v. *Hutchinson* (1969) 71 Cal.2d 342, 349-350 [78 Cal.Rptr. 196, 455 P.2d 132].) On the contrary, the purpose of considering the affidavits is to ensure that the true decision of the jury is given effect.

Here, appellant sought to prove through introduction of the juror affidavits that the jury foreperson inadvertently erred in recording the verdict of guilty, rather than not guilty, on the first burglary count. The affidavits stated that in the jury room no juror raised a hand to vote guilty on count one, and that each juror raised a hand to vote not guilty on that count. No aspect of the jurors' subjective reasoning processes in reaching their decision was discussed in the affidavits. Thus, this case clearly falls within the long-established rule allowing jurors to prove clerical error through affidavits.

The majority opinion fails to grasp the crucial distinction between clerical errors in recording a verdict and deliberative errors in reaching a verdict. Instead, it attempts to rely on *People* v. *Hutchinson, supra,* 71 Cal.2d 342, a case which does not even involve clerical error, for the proposition that juror affidavits cannot be used to establish that a reported verdict does not represent the actual verdict. (See maj. opn., at pp. 694-695.)

*Hutchinson* is inapposite for two basic reasons. First, *Hutchinson* does not deal with clerical errors in recording jury verdicts. In *Hutchinson*, this court's sole concern was the admissibility of a juror affidavit to prove a deliberative error, i.e., that the jury had been improperly influenced in rendering a verdict convicting the accused of possession of marijuana. (*People* v. *Hutchinson, supra,* 71 Cal.2d at pp. 346-351.)

The affidavit, submitted in support of the accused's motion for new trial, alleged that the bailiff made threatening statements to the jurors which compelled them to reach a hurried verdict.

Thus, the factual situation facing the court in *Hutchinson* was completely different from that of the present case. Here, appellant makes no allegation of a deliberative error involving improper influences on the jury. Rather, he seeks to prove that the jury foreperson made a clerical error in transcribing the verdict. Thus, the majority's use of *Hutchinson* to analyze the admissibility of the juror affidavits is inappropriate at best.

Even if the erroneous assumption were made that the alleged error in this case could somehow be characterized as deliberative rather than clerical, *Hutchinson* would not preclude the admission of the juror affidavits. Under the *Hutchinson* rule, juror affidavits impeaching an improperly influenced verdict are not per se inadmissible. (*Id.*, at p. 351.) Consistent with Evidence Code section 1150, juror affidavits which allege objective facts "open to sight, hearing, and the other senses and thus subject to corroboration" are admissible to prove deliberative error. (*Id.*, at p. 350.) However, affidavits which deal with the subjective reasoning processes of the jurors are not admissible. (*Id.*, at pp. 349-350.)

Here, the "handraising votes" described by the affidavits are objectively verifiable events. They are subject to corroboration. Consequently, the juror affidavits cannot be excluded even under *Hutchinson*. (See, e.g., *Krouse* v. *Graham* (1977) 19 Cal.3d 59, 80-81 [137 Cal.Rptr. 863, 562 P.2d 1022] [discussion and agreement among jurors constitute matters which are objectively verifiable and, therefore, may be proven by juror affidavits].)

Thus, the majority not only rely on an inapplicable case, but they compound their error and misconstrue the rule of the case as well.

In excluding the affidavits, the majority assert that "the purported error alleged here involved the subjective mental processes of the jurors." (Maj. opn., at p. 695.) However, this misses the point. The critical factor under the *Hutchinson* rule is how the alleged error is sought to be proved, not what the error "involves." In *Hutchinson*, the accused's claim of error—that the jury deliberations had been improperly influenced by the bailiff's statements—"involved the subjective mental processes of the jurors." Yet, the court held that the error *could* be

proved by means of juror affidavits which set forth objectively verifiable events. (*Hutchinson, supra,* 71 Cal.2d at pp. 346-351.)[2] Clearly, the result reached in today's majority opinion directly contradicts the very authority it cites.

## II.

If the juror affidavits conclusively establish appellant's claim of clerical error, this error may not be deemed harmless and disregarded. How can this court hold that, although all 12 jurors acquitted appellant of the crime for which he stands convicted, the error was not prejudicial? A greater miscarriage of justice is scarcely imaginable. Do we really want this rule to be the law in California?

Consider the logic of the majority opinion. By finding that no miscarriage of justice resulted, a rule is established that essentially states that it makes no difference which count the jury convicts on since separate instances of the same crime are fungible. Perhaps the majority subscribe to the idea that if you've seen one redwood you've seen them all. (See maj. opn., at p. 696.)

It is contended that an error that causes a wrongful conviction of one count can be ignored if the person could conceivably be guilty of another offense. This horse-trading approach advanced by the majority distorts the trial process and makes a mockery of the appellate process. Under the majority's rule, errors made on counts of which a defendant is acquitted, although nonappealable by the prosecution, can now be offset by prejudicial errors found in other counts which charge separate offenses. This entire procedure distorts the purpose behind the consolidation of different offenses for trial. (Pen. Code, § 954.) Efficiency and economy, *not* the denial of an accused's right to a fair trial on each separate charge, are the reasons why section 954 was adopted.

It has long been the law that "each count in an accusatory pleading which charges a separate and distinct offense must stand on its own merit and the disposition of one count has *no effect* or bearing on the other counts in the accusation. [Citations.]" (*People v. Ham* (1970) 7 Cal.App.3d 768, 776 [86 Cal.Rptr. 906], italics added.) Disregarding the rule that "each count [is] entitled to be severally and finally dis-

---

[2]Indeed, it is hard to imagine a claim of juror misconduct that does not "involve the subjective mental processes of the jurors" in reaching a verdict. Under the approach of the majority, a party will never be entitled to relief for such an error.

posed of *on its own merits ...*" (*ibid.*, italics added), the majority opinion lets a wrongful conviction stand because it feels the appellant should have been convicted of another count. This new principle of law—allowing a wrongful conviction to stand because it is believed that an appellant is guilty of something else for which he was acquitted—turns the concept of due process of law on its head.

If each count were considered separately, the verdict of guilt on count one would be amended by the trial court to reflect the jury's *actual* decision to *acquit* appellant. The power of the trial court to correct a clerical error made by the jury foreman in recording or announcing the verdict is well established in the law. As Wigmore notes, "When the verdict as announced ... is different ... from the verdict as assented to in the jury room at the time of voting ... [the] verdict may be corrected to represent the verdict actually agreed upon by the jury as a whole." (8 Wigmore, Evidence, *supra*, § 2355, pp. 718-719; accord *Freid* v. *McGrath, supra*, 135 F.2d at p. 834; *Burlingame* v. *Central R. of Minn.* (C.C.E.D.N.Y. 1885) 23 F. 706, 707; *Molton* v. *Staats, supra*, 27 P.2d at p. 459; *Glennon* v. *Fisher* (1932) 51 Idaho 732 [10 P.2d 294, 295]; *P. M. Lattner Mfg. Co.* v. *Higgins* (1923) 196 Iowa 920 [195 N.W. 746, 747-749]; *Wirt* v. *Reid* (1910) 138 App.Div. 760 [123 N.Y.S. 706, 714]; *Capen & others* v. *Inhabitants of Stoughton, supra*, 82 Mass. (16 Gray) at p. 368.)

Prior decisions of this state have also recognized that trial courts have the power to correct clerical errors made by jury forepersons in rendering criminal verdicts. In *People* v. *Harders* (1962) 201 Cal.App. 2d 795 [20 Cal.Rptr. 595], the jury returned a verdict convicting the accused of counts one and two of the indictment. However, counts two and three had been dismissed during trial, leaving only counts one and four to be tried. The Court of Appeal upheld the trial court's authority to correct the verdict to conform with the jury's intent to convict the accused of all of the remaining counts. (*Id.*, at p. 798.) The court reasoned that "[t]he form of the verdict is unimportant where as here the jury has unmistakably expressed its intention ...." (*Ibid.*; see also *People* v. *Camarillo* (1964) 225 Cal.App.2d 127, 133-135 [37 Cal.Rptr. 178] [trial court could correct typographical error in verdict form which resulted in the accused being convicted of a crime different from that with which he was charged].)

Here, if the affidavits conclusively establish that the jury intended to acquit appellant of count one, but the jury foreperson inadvertently re-

ported a finding of guilt, the verdict should be corrected so it reflects the true decision of the jurors.

With respect to count two, the constitutional restraints embodied in the double jeopardy clause prevent this or any court from reforming a jury verdict of acquittal once it has been rendered and the jury has been discharged. The United States Supreme Court recently stated that "[p]erhaps the most fundamental rule in the history of double jeopardy jurisprudence has been that '[a] verdict of acquittal ... could not be reviewed, *on error or otherwise*, without putting [an accused] twice in jeopardy, and thereby violating the Constitution.' *United States* v. *Ball*, 163 U.S. 662, 671 (1896)." (*United States* v. *Martin Linen Supply Co.* (1977) 430 U.S. 564, 571 [51 L.Ed.2d 642, 651, 97 S.Ct. 1349], italics added.)

Thus, only one question need be answered with respect to count two: did the jury render a verdict of not guilty? Quite clearly, the jury did render such a verdict. The verdict was announced, the jury was polled and discharged. Therefore, under the Constitution "absolute finality [must be given] to a jury's *verdict* of acquittal—no matter how erroneous its decision ...." (*Burks* v. *United States* (1978) 437 U.S. 1, 16 [57 L.Ed.2d 1, 13, 98 S.Ct. 2141], italics in original.) This principle is bedrock constitutional law, nearly a century old. I would not discard this constitutional principle so cavalierly.

Appellant's petition for a rehearing was denied July 22, 1982. Reynoso, J., did not participate therein. Bird, C. J., was of the opinion that the petition should be granted.