[No. D001498. Fourth Dist., Div. One. Feb. 23, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
CLINT LEE CROWELL, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

[1] Certified for publication with the exception of Section I and Sections III through V.

1054

COUNSEL

Pamela M. Slick and Gail R. Weinheimer for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Keith I. Motley, Janelle B. Davis and Pamela A. Ratner, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WIENER, J.**—Clint Lee Crowell appeals the judgment convicting him on count 1 of assault with a deadly weapon, inflicting great bodily injury (Pen. Code, § 12022.7)[2] and using a knife (§ 12022, subd. (b)), on count 2 of attempted murder, inflicting great bodily injury and using a knife, and on count 3 of possessing a sawed-off shotgun.

Crowell barrages us with numerous arguments most of which involve the alleged incompetence of his counsel. Two of his other arguments require extensive discussion.

The first concerns the jury instructions on the charge of attempted murder. We decide the court prejudicially erred by instructing the jury on implied malice contrary to *People* v. *Murtishaw* (1981) 29 Cal.3d 733 [175 Cal.Rptr. 738, 631 P.2d 446] and *People* v. *Lee* (1987) 43 Cal.3d 666 [238 Cal.Rptr. 406, 738 P.2d 752] and reverse his conviction on count 2.

The second deals with the court's failure to record the jury verdict of guilty on the charge of assault with a deadly weapon when the verdict was received on October 17, 1983, postponing entry of the verdict until immediately before Crowell was sentenced on February 28, 1984. We conclude the delay between receiving the verdict and its recordation in the minutes did not prejudice Crowell. We reject the balance of Crowell's arguments and affirm the judgment of convictions of assault with a deadly weapon and enhancements and of possessing a sawed-off shotgun.

### FACTUAL AND PROCEDURAL BACKGROUND

Crowell assaulted Daniel Koppel on May 30, 1983, at about 10:45 a.m. Koppel had known Crowell for about two weeks. He had been living with Crowell and Crowell's girlfriend Dorothy Jo Elliott for about 10 days. About five minutes after Koppel returned to Crowell's apartment he and Crowell started to argue.

Crowell left the room. He returned carrying a sawed-off shotgun. Crowell cocked the gun. He approached Koppel. He called him a "son of a bitch"

---

[2] All statutory references are to the Penal Code unless otherwise specified.

and pointed the gun at him. Koppel leaped from his seat and grabbed the gun. As Koppel turned to throw the gun out the sliding glass door, he felt a knife go into him. He described the sensation in his testimony at the preliminary hearing as follows:[3] "I felt a knife going into my back and bounced off my chest. . . . I turned to see what the hell was going on. Then I felt another one . . . and that is when the second wound came in and hit me in the stomach. . . . I was bleeding bad. I could hear the air and the blood bubbling out my back." Crowell had cut directly through one of Koppel's arteries causing about four pints of blood to enter Koppel's left chest cavity.

Koppel bumped into Elliott as he ran out the front door. Officer Thomas Leonard found Koppel lying on a bench at a nearby restaurant gasping for breath. Koppel repeatedly asked whether he was going to die. Koppel named Crowell as his attacker. Interviewed in the emergency room Koppel again told Leonard about the argument and stabbing.

At Crowell's apartment the police found the sawed-off shotgun hidden under the mattress of Crowell's bed. The case for the shotgun was found under a bean bag chair in the den. The police also found five knives with various blade lengths throughout the apartment. Two of the knives were found in the den where the attack had occurred. The knives were clean. Most of the knives were the buck folding type. Elliott later said that the knives had been given to Crowell by his father.

When Crowell was arrested as he walked out of his apartment he was wearing an empty knife sheath on his belt at the right side.

At the police station Crowell waived his *Miranda (Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R. 3d 974]) rights and confessed. After Crowell was informed that Koppel had said Crowell had stabbed him, Crowell responded, "You're damn right I stabbed him." When asked if he felt justified in having done so Crowell replied, "Well, not according to law, but according to the way I was brought up, and uh, you, you put me in jail, I don't care. I would like to kill the son of a bitch."

Crowell did not testify. Called as a defense witness Elliott acknowledged that within about five minutes after Koppel had returned to the apartment Koppel and Crowell got into a heated argument. Elliott went into the den to see what was happening. She saw Koppel slightly bent over holding a gun in both hands. Crowell was behind Koppel with his back against a glass door

---

[3] Koppel invoked his Fifth Amendment privilege at trial. The court ruled he was an "unavailable" witness and admitted Koppel's testimony contained in the transcript of the preliminary hearing.

and his arm around Koppel's neck. Terrified by what she saw Elliott started to return to the kitchen. Koppel then ran from the den and knocked her down. Crowell was running after him. Crowell stopped and returned to the den. Elliott followed him. She saw a table knocked over. About five minutes later the police phoned.

Elliott later consented to the police searching the apartment. They went straight to her bedroom and uncovered a shotgun lying under the mattress of the bed. Elliott denied ever seeing the shotgun in Crowell's possession. She explained she discovered the gun in Koppel's closet one day while she was putting away his laundry. She found the mustard colored shotgun case under the bean bag chair when she was cleaning.

Elliott also said the blood found in the hallway and on the throw rug was hers. The blood had been in those locations for several weeks before the incident. She denied finding any blood that could have been Koppel's after the incident.

On rebuttal Detective Maloney testified Elliott had said earlier she thought the shotgun was Crowell's and had been in the apartment as long as Crowell had lived there. Maloney also testified Crowell denied owning a shotgun.

Following a complicated series of events which we examine in more detail later, the court entered jury verdicts of guilty on all three counts. It then denied Crowell's motion for new trial[4] and sentenced him to prison for 11 years on count 2 plus a consecutive 8 month term for possessing a sawed-off shotgun. The court imposed a seven-year term on the assault with a deadly weapon charge but stayed enforcement of that term pursuant to section 654.

## DISCUSSION

### I*

. . . . . . . . . . . . . . . . . . . . .

---

[4]Following trial Crowell obtained a new lawyer. Counsel's written motion for a new trial alleged the court prejudicially erred by admitting Koppel's hearsay statements which he made to Officer Leonard, prosecutorial misconduct, and ineffective assistance of counsel. At the hearing on the motion defense counsel added another reason why the court should grant a new trial. Counsel argued that since the jury had failed to follow the court's instructions to find Crowell not guilty of assault if it found him guilty of attempted murder, he was entitled to be tried again on the assault charge. (See *post,* pp. 1059-1060.)

*See footnote, *ante,* page 1053.

## II

Crowell next contends the court's delayed entry of the guilty verdict on count 1 and its accompanying enhancements renders the verdict and findings nullities. His argument requires that we describe in some detail the circumstances surrounding the entry of the verdicts.

Among the concluding instructions to the jury were the following: "THE COURT: Mr. Crowell is charged in count 1 with the crime of assault with a deadly weapon, in count 2 with the crime of attempted murder. The charges arising of course out of the same set of circumstances and events allegedly occurring on May 3rd [*sic*] at the apartment there that we've heard about in the testimony, with Mr. Koppel as the alleged victim in each—with respect to each charge. [¶] These charges are made in the alternative and in effect allege that the defendant Mr. Koppel [*sic*] committed unlawful acts which constitute either the crime of assault with a deadly weapon or the crime of attempted murder. If you find that he committed an act or acts constituting one of the crimes so charged, you must then decide which of the offenses charged was thereby committed. Now in order to find him guilty you must all agree as to the particular offense committed. *If you find him guilty of one of the offenses then you should find him not guilty of the other.*" (Italics added.)

That instruction was given after the court conferred with counsel out of the hearing of the jury.

"THE COURT: [It] just occurred to me that one matter I don't think we did discuss when we were talking about instructions is raised by 17.03. Is your theory and your contention that those are charged in the alternative? I think—that's the instruction you submitted. I assume that's still your position? So he can be convicted of one or the other but not both.

"[PROSECUTOR]: I didn't realize that this instruction existed.

"THE COURT: Part of your package.

"[DEFENSE COUNSEL]: [Defense counsel] I read it last night. I don't know how it could be any other way.

"[PROSECUTOR]: I thought he can [*sic*] convicted of both and sentenced on one. I guess I'm in error.

"[DEFENSE COUNSEL]: Huh-uh.

"THE COURT: I don't think so. You submitted the instructions, so—but I just started—I was about to give it then I realized we hadn't specifically discussed that in chambers. But I think that's right. I think its a correct statement, so I intend to give the instruction.

"[PROSECUTOR]: Okay.

"THE COURT: Okay."[8]

After the jury deliberated and returned their verdicts the clerk read the guilty verdicts on counts 2 and 3. The jury was collectively asked whether they unanimously reached those verdicts. They responded affirmatively. The jurors were then individually polled on counts 2 and 3. Each juror responded affirmatively. Defense counsel waived polling on the enhancements. The verdicts on counts 2 and 3 were recorded in the minutes. After the judge told the clerk to record the verdicts on counts 2 and 3 he asked the jury foreman,

"THE COURT: . . . I noted that you returned [an] unused verdict with respect to count 1, the 245(A)1 charge, and any accompanying allegations. Do I understand that in keeping with my instructions you understood that count 1 and count 2 were charged in the alternative and that Mr. Crowell might be found guilty of one or the other but not both?

"THE FOREMAN: Yes, your honor.

"THE COURT: And am I correct then that the jury, having unanimously found him guilty of count 2, the attempted murder, the jury found him not guilty of count 1, the assault with a deadly weapon?

"THE FOREMAN: No your honor, that is not so. It was our understanding that we took one or the other, and the more severe—we voted on the one that's not filled out and *found him guilty*. (Italics added.)

"THE COURT: All right. So—but—but—but did not for reasons I explained to you. All right. So it was your understanding that since you found him guilty of both that you should complete the verdict form with respect to the—what you perceive to be the more serious charge?

"THE FOREMAN: That is correct, your honor.

---

[8] CALJIC No. 17.03, referred to in the court's comments, is an instruction designed to be given only when the defendant cannot be legally convicted of more than one count because two or more counts are charged in the alternative. For example, under given facts, a defendant could be convicted of either theft or receiving stolen property but not both.

"THE COURT: But the—as far as the actual deliberations and any vote, the vote was guilty as to both the charges; is that correct?

"THE FOREMAN: That is correct.

"THE COURT: It was unanimous as to—

"THE FOREMAN: . . . We also voted on the two sub-counts of the count No. 1. And that was—

"THE COURT: The accompanying allegations you mean?

"THE FOREMAN: Yes.

"THE COURT: All right. And again, was the—what was the finding with respect to

"THE FOREMAN: I'd have to look at it so I [can] make sure I use the right word.

"THE COURT: One of the allegations was concerned with whether he did or did not personally inflict great bodily injury upon Mr. Koppel.

"THE FOREMAN: The one was he did.

"THE COURT: And the other one, whether he did or did not personally use a dangerous or deadly weapon, to wit, a knife.

"THE FOREMAN: Did.

"THE COURT: And those findings were unanimous?

"THE FOREMAN: They were unanimous, your honor.

"THE COURT: All right."

The court asked to see counsel at sidebar where they conferred out of the hearing of the jury.

"THE COURT: The instruction tells them, 'If you find him guilty of one you must find him not guilty of the other.' Apparently they didn't—well, they obviously didn't follow that instruction. But based on Col. Yoder's [the foreman's] statement—the jury can be polled I suppose. They apparently found him guilty of both and found the allegations to be true, and then, as

he put it, they perceived the attempted murder to be the more serious charge, so that's the one he filled out the verdict form with respect to.

"[PROSECUTOR]: Well, I think the court has in fact taken—taken a verdict as to the other one; whether or not it was in writing, I think it's in the record now. I think it is a verdict. I've always wondered at the inconsistency of having to find a guy not guilty of a crime which common sense tells you is less than the crime you find him guilty of.

"THE COURT: Well, I would think at this point we could enter a verdict as to not guilty as to the 245(A), because we polled them and they have indicated they were unanimous on their verdict of guilty as to the attempted murder. So I think—in other words, I don't think we need to ask them to deliberate any more.

"[DEFENSE COUNSEL]: There's—he's made his position clear. He's—well, it's really not in keeping with the instruction, but the spirit of the instruction anyway.

"THE COURT: All right. Well, we'll—you agree I can discharge them at this point?

"[DEFENSE COUNSEL]: Yes.

"[PROSECUTOR]: No objection.

"THE COURT: Thank you.

"(Bench conference concludes.)

"THE COURT: [Defense counsel], you desire any further polling of the jury at this point?

"[DEFENSE COUNSEL]: No, your honor." The jury was then discharged.

During the new trial motion defense counsel said the court could not sentence Crowell on the assault charge because the court had instructed "the clerk to enter a verdict of not guilty on the lesser charge." The court denied this request by explaining that no verdict had been entered because it believed the preferable approach was to leave the issue of the blank verdict form unresolved until everyone could reflect on what would be the proper

solution.[9] After further mulling the court directed the clerk to enter a verdict of guilty on the charge of assault with a deadly weapon.

■ Crowell now contends that the court erred in delaying entry of a verdict on the assault charge. As a general proposition we agree with him that "[a]fter the verdict is received and the jury discharged, the court cannot alter or 'correct' the verdict." (*People* v. *Romero* (1982) 31 Cal.3d 685, 693 [183 Cal.Rptr. 663, 646 P.2d 824]; *People* v. *Lee Yune Chong* (1892) 94 Cal. 379, 385 [29 P. 776].) And "[o]nce the jury was polled . . . and each member thereof orally assented to the verdict and the jury was discharged, the trial of the defendant was complete and the court had no jurisdiction to recall the jury for further proceedings. [Citation.] Any such proceedings would have been nullities; the court would have lacked jurisdiction to acquit on the charge of which defendant was convicted." (*Romero,* at p. 694.)

Here, however, we cannot determine whether the verdict was modified until we determine whether there was a verdict and whether that verdict, if any, was either guilty or not guilty. Only after making these determinations can we know whether the verdict was changed by the judge. If we decide the verdict was not modified we must then answer the question whether the court's failure to record the verdict in accordance with section 1164[10] prejudiced Crowell.

---

[9] The court's complete statement to counsel is as follows: "THE COURT: I didn't [record the verdict] by design because I wanted everybody to have a chance to think about it a little bit and see what they thought was the appropriate step, so I didn't. And that was my intent, just to leave that unresolved for the moment as far as the recording of any verdict. . . . [¶] I inquired of the foreman to make sure we understood what the result was of the deliberations, but there's no verdict.

". . . . . . . . . . . . . . . . .

". . . I thought before I do that, [enter the verdict] let's let everybody think about it a little bit and make sure that ought to be done. That's still one of the options available.

". . . . . . . . . . . . . . . .

". . . I'm not too taken of recording a not guilty at this point because we may be putting ourselves in a worse position. If I go ahead and sentence him on the attempted murder and then the appellate court says no, that's in error, then we may have created more of a problem by entering a not guilty. I mean on the 245. We probably ought to have available what you now suggested as a third option I guess, and that would be to record both verdicts but sentence him on the 245 rather than the attempted murder.

"[DEFENSE COUNSEL]: Well, my option really is I think that the matter should go before a new jury so that the court has an opportunity to make sure they're properly instructed and understand and then the jury decide the issue."

[10] Section 1164 reads in part: "When the verdict given is such as the court may receive, the clerk . . . must record it in full upon the minutes, and if requested by any party must read it to the jury, and inquire of them whether it is their verdict. If any juror disagrees, the fact must be entered upon the minutes and the jury sent out; but if no disagreement is expressed, the verdict is complete, and the jury must be discharged from the case."

 It is well settled that a judgment of conviction cannot be entered unless the jury expressly finds against the defendant upon the particular issue presented by the charging information as reflected in the verdict forms. (*People* v. *Bratis* (1977) 73 Cal.App.3d 751, 763 [141 Cal.Rptr. 45].) A jury's unanimous finding, however, need not be reduced to writing. The formal procedures applicable to criminal cases contained in sections 1149, 1162, 1163 and 1164 do not require a verdict to be in writing. (*Stone* v. *Superior Court* (1982) 31 Cal.3d 503, 511, fn. 4 [183 Cal.Rptr. 647, 646 P.2d 809].)

Here, the jury found Crowell guilty of assault with a deadly weapon. In the presence of counsel and other members of the jury the foreman told the judge that the jury unanimously found Crowell guilty on count 1 and the accompanying allegations.

Although the court and defense counsel were under a misapprehension as to the law at the time the jury instructions were given and the verdicts received, the prosecutor correctly observed the jury had returned a guilty verdict. The jury instructions telling the jury that they could find Crowell guilty on either count 1 or 2 but not both were wrong. Section 654 proscribes double punishment, not double conviction. Conduct giving rise to more than one offense within the meaning of the statute may result in initial convictions of both crimes, only one of which may be punished. (*People* v. *McFarland* (1962) 58 Cal.2d 748, 762 [26 Cal.Rptr. 473, 376 P.2d 449]; see also *People* v. *Beamon* (1973) 8 Cal.3d 625, 636-640 [105 Cal.Rptr. 681, 504 P.2d 905].)

 Thus intuitively rejecting the court's erroneous instructions on this point, the jury correctly returned a verdict of guilty on count 1. Although the jury may not have followed the court's instructions, the jury verdict is nonetheless valid. We must now turn to the question of whether the court's failure to timely record the verdict requires reversal.

 Section 1164 requires the clerk to record the verdict "in full upon the minutes" before the jury is discharged. Here the verdict was not recorded until immediately before Crowell was sentenced. Although the court later gave valid reasons for postponement of the entry of the verdict, to have done so without notice and consent of counsel is contrary to the provisions of section 1164.

 Every error, however, does not require reversal. We must reverse only where the error results in a miscarriage of justice. (Cal. Const., art. VI, § 13.) Section 1258 provides we must affirm "without regard to technical errors or defects . . . ." Section 1404 explains that departures from statuto-

ry procedures do not make the procedure "invalid, unless it has actually prejudiced the defendant, or tended to his prejudice, in respect to a substantial right."

■ Here the delay did not prejudice Crowell. In fact, it is difficult to understand how or in what manner a defendant could be prejudiced by a guilty verdict which is not recorded before the jury is discharged. Certainly if the probation department is unaware of a conviction it might have an effect on a defendant's probation report and sentencing. Sentencing may have to be continued until all of the relevant information is obtained. However, omitting a defendant's conviction from his or her probation report can hardly be viewed as prejudicial to that defendant.

Obviously the failure to record a verdict would present problems if there were uncertainty as to what verdict the jury had reached. Under such circumstances it becomes necessary to ask the jury to continue their deliberations or to inquire of the foreman in order to clarify any ambiguity. No confusion arises here, however, from this jury's unequivocal and unanimous findings. Rather the error arises because of the incorrect jury instructions. A defendant is not entitled to have a favorable jury verdict entered under incorrect instructions of law.

The only possible prejudice here is that defense counsel failed to request that the jury verdict be entered following the court's statement that "we could enter a verdict as to not guilty as to 245(A)." Again, however, we are unwilling to say that a defendant's right to competent counsel requires counsel to urge an incorrect legal ruling. Moreover, it would be speculative to assume that the court would necessarily have entered the not guilty verdict. In light of the prosecutor's statement that the guilty verdict had been received the prosecutor might have opposed the entry of a not guilty verdict. Also we must look to what the court did and not what it initially said. By leaving the verdict open to allow further time for reflection, the court manifested its concern that the instructions were possibly erroneous. Had it been pressed to enter the not guilty verdict we presume it would have followed the law and refused to have done so. In light of all these circumstances we hold the guilty verdict and findings on count 1 are valid.

III-V*

. . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante,* page 1053.

## DISPOSITION

The judgment of conviction of attempted murder is reversed. The judgment in all other respects is affirmed.

Kremer, P. J., and Kintner, J.,† concurred.

---

† Assigned by the Chairperson of the Judicial Council.