Filed 4/26/16  P. v. Gonzalez CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>RUBEN INIQUEZ GONZALEZ,<br><br>    Defendant and Appellant. | F068670<br><br>(Tulare Super. Ct. No. VCF245660)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County.  Gerald F. Sevier, Judge.  (Retired judge of the Tulare Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Constit.)

Gordon S. Brownell, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Robert C. Nash, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

A jury acquitted Ruben Inriquez Gonzalez of five counts of lewd acts upon Adriana S., a child under the age of 14 (Pen. Code, §§ 288, subd. (a); 1203.066),[1] but found him guilty of one count of the lesser offense of attempted lewd acts upon a child (§§ 288, subd. (a); 664). The trial court ordered Gonzalez to serve a five-year term of formal probation, which included 365 days in jail. He was also ordered to register as a sex offender pursuant to section 290.

Gonzalez contends he received ineffective assistance of counsel when defense counsel informed the trial court Gonzalez's petition for release of confidential juror contact information lacked merit and should be denied.[2] We disagree and affirm.

## STATEMENT OF FACTS

From July 2006 until June 2007, Adriana lived with Gonzalez and his wife, Adriana's aunt, because she was getting into trouble at home. Adriana was in seventh grade and 13 years old at the time. Adriana's three cousins also lived in the home. Adriana slept in one of the four bedrooms with one of her cousins.

In January or February of 2007, Adriana complained to Gonzalez that her back was hurting. Gonzalez massaged her back and then put his lips on her neck. Days later, Gonzalez came into Adriana's bedroom while she was sleeping alone. She woke to find him touching and kissing her, and, after pulling up her shirt, licking her breasts. Adriana did not tell anyone because she was scared and did not think anyone would believe her.

On one occasion, Adriana was sent home from school due to a dress code violation. Gonzalez picked her up in the car and asked her if she liked what he did to her.

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

[2] Gonzalez's opening brief also contained an argument that the trial court erred in the way in which it entered a lesser included offense verdict, but he subsequently withdrew the issue in his reply brief.

She said she didn't.  Gonzalez said he did it because she was pretty and he could not help himself.  He warned her not to tell her cousin.

On another occasion, when Adriana was again asleep, Gonzalez came into her room, woke her, kissed her, moved her shirt and again licked her breasts.  One of Gonzalez's daughters was asleep in the room and Gonzalez kept checking to see that she did not awaken.  The incident lasted less than 10 minutes.

On still another occasion, Adriana was asleep in the morning when Gonzalez came in, pulled up her shirt and licked her breasts and neck.  He then pulled down her shorts and licked her vagina.

After Adriana no longer lived with Gonzalez and her aunt, she told someone about the incidents because she wanted to get counseling.  She waited to talk to someone because she was scared and did not want to lose her aunt and cousins.  Adriana was "fed up" with seeing Gonzalez every time he came to her house and acting as if "nothing ever happened."

On September 7, 2010, a Ventura County detective assigned to investigate a report of a sexual assault contacted Adriana, now 17 years old.  The detective spoke to Adriana, her sister, and their mother.  Because all of the purported incidents occurred in Visalia, the detective handed the case over to Visalia Police Detective Chris Jennings, who followed-up.

Realizing that the incidents occurred in 2007 and there would be no physical evidence, Detective Jennings created a letter to look as if items had been submitted for testing in 2007 and Gonzalez's DNA was found on the victim.  On December 1, 2010, Jennings left a copy of the letter at Gonzalez's home and asked that he call him.

The following day, Detective Jennings and a detective who spoke Spanish interviewed Gonzalez at the police station.  In the interview, which was played for the jury, Gonzalez admitted kissing Adriana on her leg close to, but not actually on, her vagina.  According to Gonzalez, he had gone into Adriana's room to tell her breakfast

3

was ready when she removed her blanket and he saw she was naked. She then pulled him toward her and he gave her a kiss on one breast. She opened her legs and grabbed the back of his neck. Gonzalez said he kissed her on the chest "a little bit" and on the legs, but not on her vagina.

Following the interview, Gonzalez went to Adriana's home and said he was stopping by because he was working in Ventura County. Before he left, he asked Adriana's mother for forgiveness.

The next day, December 3, 2010, Gonzalez asked to meet with Detective Jennings again. During that conversation, which was also recorded and played for the jury, Gonzalez admitted that he had gone to Adriana's house, that he had told his wife about the allegations, and that Adriana had pulled his head towards her genitals. Gonzalez denied ever doing anything inappropriate to his own daughters.

Gonzalez testified in his own defense that he had moderate to severe hearing loss and he did not understand much English. Gonzalez claimed the detective's Spanish during the interrogation was not very good; that he felt scared and intimidated; and that Adriana's testimony was primarily false. He admitted he took the blanket off of Adriana, who he then saw was naked, but he never touched her.

Gonzalez's wife testified Adriana lived with them because she was having problems at school, getting into fights and hanging out with gang members.

One of Gonzalez's daughters, who was 21 years old at the time of trial, recalled Adriana was suspended from school while she stayed with them and snuck out of the house without permission. Even though the daughter was a light sleeper and shared a room with Adriana, she did not recall her father coming into the room while she was sleeping. Gonzalez's daughter did not think Adriana exhibited any reservations about being around Gonzalez or being in their home.

4

Gonzalez's son, who was 16 or 17 years old at the time Adriana lived with them, described Adriana as rebellious. According to him, his two sisters and Adriana all slept in the same room and usually kept their door locked.

## DISCUSSION

Gonzalez contends he was denied effective assistance of counsel when his attorney incorrectly told the trial court his postverdict petition for release of confidential juror contact information lacked merit and should be denied. We disagree.

In order to address Gonzalez's claim of ineffective assistance of counsel, we first address at length the proceedings leading to and surrounding his petition for release of juror contact information.

### Procedural Background

Gonzalez was charged with five counts of lewd acts upon a child, pursuant to section 288, subdivision (a).[3] The jury acquitted him of the first four counts and convicted him in count five of the lesser offense of attempted lewd acts upon a child (§§ 664, 288, subd. (a)).

In instructing the jury on the charged offenses, the trial court gave verbal instructions on the lesser included offense of attempted lewd act on a child under the age of 14 years. The trial court also instructed on the lesser offense of battery, stating: "A lesser crime to lewd act on a child under the age of 14 and lesser than attempted lewd act upon a child under the age of 14 is the crime of simple battery," In contrast, the written instruction states: "A lesser included crime to lewd act on a child under age 14 is simple battery." As for the lesser offense of assault, the trial court instructed: "A lesser crime to lewd act upon a child and lesser to all the other crimes I've instructed you as lessers is the

---

[3] Counts 1 through 5 charged Gonzalez with a lewd act against Adriana, to wit, mouth to breast first time (count 1); mouth to breast – next time (count 2); mouth to breast – last time (count 3); removing panties (count 4); and mouth to vagina (count 5). Count 5 included a special allegation of substantial sexual conduct.

5

crime of simple assault," In contrast, the written instruction states: "A lesser included crime to lewd act upon a child under age 14 in counts 1 through 5 is assault." The jury was provided a copy of the written instructions during deliberations.

In instructing the jury on how to fill out the verdict forms, the trial court stated that, in relevant part, as to each of the crimes charged, if the jury found Gonzalez not guilty of a greater crime, it could find him guilty of a lesser crime if they were convinced beyond a reasonable doubt of that guilt. It further instructed, "[a]s to each of the crimes charged, the lesser crimes are attempted lewd act with a child under the age of 14, battery and assault."

When the jury returned the verdict forms, there was some confusion as to the manner in which they were completed. As to count 5, the jury found Gonzalez not guilty as charged, but it also returned verdict forms on count 5 finding Gonzalez guilty of the lesser offenses of attempted lewd acts with a child, of battery and of assault. The trial court noted a "misunderstanding" as to count 5 stating:

> "If your verdict as to Count 5, the charged offense, was not guilty and you reached a verdict on the lesser offense of attempted lewd act on a child, if your verdict as to the lesser offense was guilty, then you would not complete verdict forms for the lesser offenses of battery or assault. You just would leave those blank …."

After reading the not guilty verdicts on counts 1 through 4, the trial court questioned the jury panel as to whether those were the actual verdicts, and they responded, "Yes," in unison, to each.

The trial court then read the verdict form on count 5, which found Gonzalez not guilty of the charged offense. The clerk was directed to enter the not guilty verdict as to the count 5 charged offense, which the jury panel acknowledged was its verdict, and it was accepted by both parties. The trial court then read the verdict form on count 5 finding Gonzalez guilty of the lesser included offense of attempted lewd act upon a child

under the age of 14.  The trial court asked the jury panel if that was correct, to which they responded, "Yes."  Defense counsel declined to have the jury polled.

The trial court then addressed the additional verdict forms for count 5 finding Gonzalez also guilty of the lesser included offense of battery and the lesser included offense of assault.  The trial court noted these verdict forms were "not in order," since the jury found Gonzalez guilty of the lesser included offense of attempted lewd act.  After conferring with counsel off the record, the trial court addressed the jury and explained,

> "I cannot accept a verdict of any kind of a lesser offense unless you find the defendant not guilty of a greater offense.  You've found him guilty of a greater offense than battery and assault.  [¶]  So I just want to clarify your intent, and as I understand, this is acceptable for counsel to do it this way for me to talk - first … to the foreperson."

Both counsel agreed.

The trial court then addressed the jury foreperson, stating,

> "[W]ith the understanding now that assuming that the jury found Mr. Gonzalez guilty of attempted lewd act upon a child, which your jury stated it did, … I cannot accept a verdict of any kind, guilty or not guilty, as to the lesser offenses.  [¶]  Is it your understanding under that direction that I've now explained to you that your jury would then present the court with a guilty finding as to attempted lewd act upon a child, and if we had a clean verdict form for you that had nothing on it, you would present two verdict forms that were not filled in, one as to battery and one as to assault.  [¶]  Is that your understanding .…"

The foreperson stated, "Yes," as did each juror in turn when asked.

The trial court then addressed counsel, stating, unless there was some objection, it would cross out the "guilty" on the count 5 battery and assault verdict forms.  No objection was made and the trial court struck that wording on both those forms.

The jury rendered its verdicts on Friday, December 14, 2012.  On the next court day, Monday, December 17, 2012, the trial court, having been contacted by the jury foreperson over the weekend, met with the foreperson and counsel in chambers.  Counsel was present, but Gonzalez was not.  In that conversation, the foreperson stated that he had

7

called the trial judge over the weekend because he thought "we made an error in our marking" of the verdict forms. The foreperson explained:

> "[I]n my mind, we were going to the lesser – the battery and the assault, and I thought that there was a progressing tree that we had to go, and then it dawned on me after we walked out that, in fact, was not the case. So I wanted to correct that error."

After questioning by both counsel and the trial court, the jury foreperson acknowledged the jury found Gonzalez not guilty of committing a lewd act. He agreed that the jury then also found Gonzalez guilty of the attempted lewd act, battery and assault. The foreperson was asked whether he recalled at the time the verdicts were made that the trial judge has asked whether it was the jury's intent to find Gonzalez guilty of the attempted lewd act and that he had answered "yes." The foreperson acknowledged that was correct, but that he "thought there was a progression tree," meaning that, in order to find Gonzalez guilty of battery and assault, the jury first had to find him guilty of the attempted lewd act. The foreperson stated he thought that was the understanding of all 12 jurors and that none thought Gonzalez had the requisite intent to attempt the lewd act.

On January 14, 2013, Gonzalez filed a petition for access to the trial jurors' identifying information, asserting it was "necessary for the defendant to communicate with jurors for lawful purposes, including developing a motion for new trial." The reporter's transcript of the December 17, 2012, interview of the jury foreperson by the court and counsel was attached. Defense counsel noted the foreman's statements that the verdicts as recorded did not accurately reflect the jury's verdicts and juror's names, address and telephone numbers were needed to investigate potential juror misconduct or confusion in completing the verdict forms.[4]

---

[4] Gonzalez also filed a motion to reduce the offense, which asked the trial court to reduce the conviction of attempted lewd conduct to a lesser offense. That motion is not at issue on appeal.

8

The prosecution filed written opposition to the motion, stating the trial court could not alter or correct the verdict as the trial court no longer had jurisdiction in the matter. The motion further asserted defense counsel was not entitled to juror contact information because there was no alleged juror misconduct.

At the March 19, 2013,[5] hearing on both the motion to release juror information and motion to reduce the offense, the trial court first took up the motion to reduce, stating "if the court decides the verdict cannot be altered, then there's no point … to take up the petition for disclosing confidential juror information."

Defense counsel, citing *People v. Moreda* (2004) 118 Cal.App.4th 507 and Evidence Code section 1150, argued the trial court had the power to reduce the offense based on the court's view of the evidence and the jury foreperson's statements.

The prosecutor argued the trial court should not consider the jury foreperson's statements because the jurors, including the foreperson, had been polled and all agreed "that was their verdict." The prosecutor also noted the foreperson's statement was only the statement of one person who was not under oath at the time.

The trial court agreed that it would not alter the verdict on the basis of one juror's statement. However, the trial court stated the "threshold question" was whether it had the authority to change a verdict because of a jury's misunderstanding, reasoning that, if it did have that authority, it should allow counsel to interview the jurors.

The prosecutor pointed to *People v. Romero* (1982) 31 Cal.3d 685, in which the conviction was affirmed despite the jurors saying that they had "actually flip-flopped" their verdicts. The prosecutor also argued the evidence clearly supported the verdict as rendered by the jury of the attempted lewd act.

---

[5] At an earlier scheduled hearing February 6, 2013, the parties appeared before Judge H.N. Papadakis, who was not the trial judge in the case. The hearing date was continued in order to allow the sitting judge to hear the motion.

Defense counsel argued the trial court had discretion under section 1181, subdivision 6, to modify the verdict to a lesser offense when the evidence showed the defendant to be not guilty of the crime of which he was convicted. Defense counsel also argued again that the jury foreperson's statement could be considered as evidence testing the verdict under Evidence Code section 1150.

The prosecutor reiterated that the jury foreperson's statement should not be considered, as it was not part of the evidence, and that the evidence at trial showed the crime was not simply an assault or battery.

Defense counsel countered there was nothing to dispute that the jury foreperson did not accurately represent the jury. He further stated he was under the impression he had to argue juror misconduct in order to get the private juror information and had to admit no such juror misconduct occurred.

When asked by the trial court if the court was without power to disclose confidential juror information unless there was an issue of juror misconduct, defense counsel stated that was his understanding. Defense counsel stated further, "I admit, I have nothing to represent to the court other than, quote, unquote, the mistake that was made to allege juror misconduct. I have nothing to say about what happened during the deliberations, any comments from any juror that someone did something wrong. I admit, I don't have that, and that's not where I'm going here."

In response, the trial court stated, "Then it seems to me that what I should do so the record is clear is to deny the motion for release of the confidential juror information and solely address the issue as to whether or not the court should modify the verdict pursuant to [section] 1181.6 or … Evidence Code Section … 1150." Defense counsel agreed and the trial court denied the motion to release confidential juror information.[6]

---

[6] The trial court denied the motion to reduce the offense April 16, 2013, stating the evidence was sufficient to uphold a conviction of attempted lewd and lascivious act on a child. The denial of that motion is not challenged here. See footnote 2, *ante*.

10

*Applicable Law and Analysis*

### A. Ineffective Assistance of Counsel

Gonzalez now claims defense counsel was ineffective for telling the trial court the petition lacked good cause for the release of juror information. As argued by Gonzalez, trial counsel "abandoned the petition without knowing what the results of any investigation would be and without speaking to a single additional juror."

To establish a claim of ineffective assistance of counsel, Gonzalez must demonstrate:

> "(1) counsel's performance was deficient in that it fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient representation prejudiced the defendant, i.e., there is a 'reasonable probability' that, but for counsel's failings, defendant would have obtained a more favorable result. [Citations.] A 'reasonable probability' is one that is enough to undermine confidence in the outcome. [Citations.] [¶] Our review is deferential; we make every effort to avoid the distorting effects of hindsight and to evaluate counsel's conduct from counsel's perspective at the time. [Citation.] A court must indulge a strong presumption that counsel's acts were within the wide range of reasonable professional assistance." (*People v. Dennis* (1998) 17 Cal.4th 468, 540–541.)

However, as our analysis below concludes, the underlying petition to disclose juror information and the circumstances surrounding it reveal the petition had no merit, and therefor trial counsel was not ineffective for being candid with the court.

### B. Release of Confidential Juror Information

In a criminal case, "personal juror identifying information," namely their names, addresses and telephone numbers, must be sealed after their verdict is recorded. (Code Civ. Proc., § 237, subd. (a)(2).) However, Code of Civil Procedure section 206, subdivision (g) permits a defendant to request the release of sealed juror information upon a showing of good cause within the meaning of Code of Civil Procedure section 237, subdivision (b). (See *People v. Wilson* (1996) 43 Cal.App.4th 839, 852.) To show

11

good cause, a defendant must make a showing that supports a reasonable belief that jury misconduct occurred and further investigation is necessary to provide the trial court with sufficient information to rule on a defendant's new trial motion. (*People v. Jones* (1998) 17 Cal.4th 279, 317; *People v. Carrasco* (2008) 163 Cal.App.4th 978, 990.)

The denial of a petition filed pursuant to Code of Civil Procedure section 237 is reviewed under an abuse of discretion standard. (*People v. Santos* (2007) 147 Cal.App.4th 965, 978.) The trial court's discretion "must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice." (*People v. Jordan* (1986) 42 Cal.3d 308, 316, italics in original.)

Here, the petition was based on the apparent unsworn statement of the jury foreperson that the jury meant to convict Gonzalez of something other than what they did. Pursuant to Evidence Code section 1150, subdivision (a), evidence of " 'statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly' " (*Mesecher v. County of San Diego* (1992) 9 Cal.App.4th 1677, 1683, fn. 4) may be used to test a verdict. However, "evidence about a jury's 'subjective *collective* mental process purporting to show *how* the verdict was reached' is inadmissible … where … they 'at most suggest "deliberative error" in the jury's collective mental process – confusion, misunderstanding, and misinterpretation of the law.' " (*Id.* at p. 1683, italics in original; see Evid. Code, § 1150, subd. (a).)

Here, the jury foreperson's statements were clearly inadmissible under Evidence Code section 1150, subdivision (a), as they only reflected the jury's deliberative processes and would not support any finding of juror misconduct. In the absence of any evidence of misconduct, there was no good cause for the release of juror information. Hence, the trial court did not abuse its discretion in denying Gonzalez's petition.

Nevertheless, Gonzalez argues:

"Besides 'the potential of juror misconduct,' the defense petition was also based upon 'confusion in completing the verdict forms.' … The latter ground is one of the statutory grounds for a motion for new trial, which is that the 'verdict has been decided … by any means other than a fair expression of opinion on the part of all the jurors.'  (§ 1181, sub. (4).)"

However, consistent with *People v. Romero, supra,* 31 Cal.3d at pages 694–695, the "deliberative error" expressed by the jury foreperson here does not constitute valid grounds to impeach a verdict and grant a new trial.  As stated in *Romero*:

"Penal Code section 1181, subdivision 4, cited by defendant, does not mandate a different result.  It provides that a court may grant a new trial when the verdict has been decided 'by any means other than a fair expression of opinion on the part of all the jurors.'  Here, the jurors were polled and all agreed to the verdict.  Defendant argued that a 'miscarriage of justice has occurred due to the mistake in this case' justifying a new trial under the cited subdivision, although he admits that most decisions discussing section 1181, subdivision 4, involve instances of jury misconduct.  In fact, defendant does not cite any case of 'mistake' in which this subdivision was invoked; and, since no miscarriage of justice resulted – the jury clearly found defendant guilty of one charge – there is no reason to overturn the judge's denial of the motion here."  (*Id.* at p. 694., fn. 7.)

Here too, each and every juror, including the foreperson, orally affirmed that their verdict was guilty of attempted lewd acts with a child.  The verdict was returned at the conclusion of that oral confirmation and cannot be disturbed on the contention of a single subsequently dissatisfied juror, making no allegations of misconduct, after the jury has been discharged.  (See *People v. Thornton* (1984) 155 Cal.App.3d 845, 858–859 [if no disagreement is expressed on polling, the verdict is complete]; § 1164.)  The purported error alleged here involved the subjective mental processes of the jurors and thus did not compel a new trial.

13

Because we find no error in the trial court's denial of the motion for release of juror information, we also find Gonzalez did not receive ineffective assistance of counsel, because, absent counsel's concession, there is no reasonable probability Gonzalez would have obtained a more favorable result. (*People v. Dennis, supra,* 17 Cal.4th at pp. 540–541.)

## DISPOSITION

The judgment is affirmed.

_____
POOCHIGIAN, J.

WE CONCUR:


_____
KANE, Acting P.J.


_____
PEÑA, J.